CHESTER EMERY COMPANY *vs.* HEMAN S. LUCAS.

The plaintiff, being the grantee of the metals and minerals in a tract of land bounded " beginning at the centre of the vein of iron ore on the line between " A. and B., thence, &c., brought an action of trespass against the defendant for digging the same ; at the trial, the location of the grant being in dispute, there was conflicting evidence whether there was any such vein, and whether there were not more veins than one, and whether the parties agreed upon a line of rocks as marking the place of a supposed vein, and whether the vein, if any existed, was a vein of emery and not of iron : the judge charged, in substance, that if the jury found that there was one vein of iron on the line between A and B., that vein would be the starting point in the description of the deed, and parol evidence would not be admissible to affect it ; but if there were more than one such vein, parol evidence would be admissible to show which vein was intended ; if there was no vein, and the parties agreed upon certain rocks as marking the location of a vein, those rocks would be the starting point ; if there was not a vein of iron ore, but was a vein of mineral supposed by the parties to be iron ore and called in the deed a vein of iron ore, that vein would fix the starting point of the location. *Held,* that this charge appeared to be adapted to and sufficient to meet the different aspects of the case.

When in the attempt to locate land according to the boundaries given in a deed uncertainty or ambiguity arises, evidence of extrinsic facts is admissible for the purpose of ascertaining the intention of the parties to the conveyance.

A grant to one and his heirs of all the iron ore, metals and minerals in a described tract of land, with the right to enter and dig and carry away the ore, &c., and to erect and use buildings and structures for preparing it for market, and the right to dig wells and use water and to build necessary roads, the grantor " having one year's notice previous to commencing to dig upon the premises," is a grant of a present estate in fee of the ore, &c., and gives the grantee possession so as to maintain an action against a trespasser who removes the ore, although the grantee had given no previous notice of his intention to dig upon the premises.

TORT. The action was originally brought against Heman S. Lucas and Charles Alden. The plaintiff afterwards discontinued as against Alden. The declaration was as follows :

" And the plaintiff says the defendants on the first day of January A. D. 1870, and from thence on divers times and continually to the first day of February A. D. 1872, broke and entered the plaintiff's close [describing it substantially in accordance with the description contained in the deed from Wright to Lucas hereinafter set forth] and took and carried away fifty thousand tons of emery and fifty thousand tons of iron and converted the same to their own use." The answer denied each and every of the plaintiff's allegations.

At the trial in the Superior Court, before *Allen*, J., the plaintiff claimed title under a warranty deed from Erastus Wright to the defendant, the material portions of which were as follows :

" Know all men by these presents : That I, Erastus Wright, . . . . in consideration of one hundred dollars paid by Heman S. Lucas, . . . . do hereby give, grant, sell and convey unto the said Heman S. Lucas, his heirs and assigns, all the iron ore, metals and minerals in and upon the following described tract of land, situated in said Chester, and bounded and described as follows, to wit : Beginning at the centre of the vein of iron ore on the line between said Wright and Franklin W. Dewey ; thence westerly on said line five rods ; thence northerly and parallel with said vein of iron ore to land of Jonathan Melvin ; thence easterly on said Melvin ten rods ; thence southerly and parallel with said vein of iron ore to lands of said Dewey, thence westerly on said Dewey five rods to the first station, estimated to contain about two and one half acres, more or less. Also the right for said grantee, his heirs, assigns, servants and agents, at all times to enter upon said premises for the purpose of digging and carrying away said ores, metals and minerals, and working in and upon the mine, there situated, and to erect and use upon said premises all such buildings and structures as may be necessary or convenient for the purpose of preparing said ores, metals and minerals for the market, together with the right to use said buildings and structures for the purpose of preparing such ores, metals

and minerals as may be obtained by the grantee, his heirs and assigns, from tracts of land adjacent to the above described tract, or in the vicinity thereof. Also the right to dig wells upon said premises and conduct the water therefrom, as well as other water that may be found thereon or brought thereto, to such places, and use the same for such purposes as the grantee, his heirs and assigns may choose. Also the right for said grantee, his heirs and assigns, servants and agents to pass and repass upon and over any part of said premises in such manner as shall be most convenient for the enjoyment of the rights, privileges and easements above conveyed. Also the right to build and keep in repair all such roads and ways as may be necessary or convenient for the use of the premises, for the purposes aforesaid, said Wright to have one year's notice previous to commencing to dig upon said premises. To have and to hold the afore-granted premises, rights, privileges and easements to the said grantee, his heirs and assigns, to their use and behoof forever."

The estate conveyed by this deed, by sundry subsequent conveyances, became vested in the plaintiff; while the fee of the land, subject to the estate conveyed, remained in Erastus Wright till his death, when it descended to his son.

The plaintiff, for the purpose of showing that the defendant had committed the trespass alleged, by removing emery ore from the land described in the deed from Wright to Lucas, introduced evidence tending to show that there was a continuous vein in the rocks, extending from a point some three or four miles northerly of the place where the defendant dug, to a point on a line between the Dewey lot referred to in the deed and the Wright property, and that the defendant removed emery from the vein in the rocks at a point on the Wright land a few feet from the Dewey line.

The defendant denied that he had taken any emery from the land described in the deed, and introduced evidence tending to show that the Wright lot was originally lot No. 16, in the third division of lots, in the town of Chester, which contained one hundred and one acres, and began at the northeast corner at a small beech tree, and ran thence west one hundred and sixty rods to a

beech tree ; thence south, ten degrees west, one hundred rods, to a beech tree ; thence east, one hundred sixty-four rods, to a hemlock tree ; thence northerly, to the corner first mentioned ; and that the Dewey lot was carved out of it by the following description : " Beginning at the southeast corner [of the Wright lot] ; thence north, ten degrees east, sixty-three rods and five tenths of a rod, to a stake and stones ; thence west, sixty-three rods and twenty-five hundredths of a rod ; thence south, ten degrees west, sixty-three and five tenths rods ; thence east to the first mentioned corner, containing, by estimation, twenty-five acres."

There was evidence tending to show that when Wright's deed to Lucas was made, Lucas and an agent of Wright went over the ground, and agreed on certain out-cropping rocks in a line extending in a course a little west of north, from the north line of the Dewey lot toward the Melvin lot, as indicating the line of the vein of iron ore intended in the deed, and that Wright assented to these monuments. The lot thus described was not entered by the defendant. The plaintiff claimed that there was no definite fixing on any such monuments as indicating the course of the vein, and claimed that the parcel of land described in the deed was farther west, and included the place of the alleged trespass.

There was evidence tending to show that there was a mine on the Melvin lot a few rods from the Dewey lot; that in this mine there was a vein of iron ore, of a superficial width of several feet, and at the side of this ore, and separated from it by a fringe of rock about one or two inches thick, a vein of emery ; that wherever, north of this Melvin mine, openings had been made in what the plaintiff claimed to be the continuous vein, a vein of iron ore was found, and with it a vein of emery, in substantially the same relation to the vein of iron ore as at the Melvin mine ; and that in several places other veins of iron ore had been found separate from any emery.

It was in evidence that when the deed from Wright to Lucas was given, Lucas was engaged in getting out iron ore on a contract which he had made to supply a furnace, and knew nothing about the existence of emery in any part of the region,

and supposed that all the minerals found were iron. It did not appear that Wright knew anything about the character or location of any vein of iron or any other mineral, and it was shown that he was an old man and did all his business through an agent.

It was in evidence, from testimony of the defendant, that when the deed from Wright to him was given, he neither knew nor supposed that there was any vein of iron ore at the place where the acts were done which constituted the alleged trespass.

It was further in evidence that the defendant had opened a mine some two or three hundred feet long, and removed emery therefrom, in a parcel of the Wright lot, lying westerly of the Dewey lot, and extending within some fifty feet of the Dewey west line. It was in evidence that this mine did not contain any vein of iron ore, but only a vein of emery, which was not a material capable of being worked as iron, nor having any commercial value as iron, although in most cases some admixture of iron was found in it.

The evidence was conflicting as to whether the vein which the defendant worked was or was not a continuation of the vein in the rock, which was a vein of iron ore at the Melvin mine. The plaintiff offered evidence tending to show that there was but one vein of ore which was continuous through the mountain, and that the place of the alleged trespass was a part of this vein, and that, taken as a whole, it could properly be called a vein of iron ore. The witnesses for the plaintiff, on cross-examination, testified that a vein in which iron did not exist in a form capable of being worked as iron, nor having a commercial value as iron, could not be properly called a vein of iron ore, and the evidence was conflicting as to whether there was a vein of iron ore at the place of the alleged trespass. There was evidence tending to show that there were veins of ore in the Wright lot other than that vein which the defendant mined. There was evidence tending to show that when the defendant and Wright's agent " went over the ground " before the execution of the Wright deed, they did not go west of the Dewey lot, nor within fifteen or twenty rods of the place where the defendant mined.

There was no evidence that any notice had ever been given by any one claiming under the deed from Wright to Lucas of an intention or purpose or desire to begin to dig on the land therein described.

The defendant asked the court to rule that if, at the time of making the deed from Wright to Lucas, the outcropping rocks between the north line of the Dewey lot and the south line of the Melvin lot were agreed on as marking the line of the vein of iron ore referred to in the deed, the mining right conveyed by that deed was limited to the land extending five rods each side of the line of those out-cropping rocks ; whether they, in fact, marked the line of a vein of iron ore or not :

That if, when the deed was made, no visible monuments were agreed on by the parties as marking the territory covered by the deed, it conveyed no right except in a strip of land extending five rods each side of a vein of iron ore ; and, if there was no vein of iron ore extending from the line of the Dewey lot to the line of the Melvin lot, the deed conveyed nothing :

That if a vein of iron ore were found extending only part of the distance from the Dewey lot to the Melvin lot, such vein would not answer the description, and would not fix the location of the lands described :

That the vein of emery which extended northwesterly from the Dewey lot was not, within the meaning of the deed, a vein of iron ore ; that a vein of iron ore, to satisfy the description in the deed, must be a vein of iron ore containing the iron in such condition as to be fit for working in the furnace, or fit for purposes of commerce or business, as distinguished from a vein of another mineral with some iron mingled with it ; that if such a vein existed down to the Melvin mine, and if, across the Wright lot below that mine, the vein or bed of iron ore did not appear, though a vein in the rock did appear, such vein in the rock without the vein or bed of iron ore was not " the vein of iron ore " within the description in the deed, and did not fix the location of the land described in the deed :

That if one of the parties to the deed erroneously supposed that emery was iron, this would not serve to change the character

or effect of the conveyance, unless monuments were pointed out at or about the time of making the deed, as fixing what was agreed on as substantially the line of the vein of iron ore named in the deed :

That if a vein of iron ore existed from the Dewey lot to the Melvin lot, it did not fix the location of the lands in the deed, unless it was either the only vein, or was capable of identification as the particular vein intended by the parties to the deed :

That if it could not be ascertained whether the vein of iron ore extended from the Dewey lot to the Melvin line, or where it ran, if it did so extend, the deed conveyed nothing :

That even if the vein of iron ore were found and did extend from the line of the Dewey lot to the Melvin line, the deed conveyed only a contingent interest in the mines, to become vested upon the happening of an event, namely, on the giving of notice to Wright of an intention to dig, and the expiration of a year thereafter ; or at all events of an intention to begin a year after the giving of the notice ; and that this notice not having been given, the plaintiff had no possession or right to the possession of the land or of the mining right therein, and that the action could not be maintained, because of the want of such interest in and possession of the estate as was necessary to support it :

That even if the deed from Wright to Lucas conveyed the mining right in the premises where the defendant's mine was, the defendant, under the deed from Wilcox, had a right to mine there, till the plaintiff had perfected his right by giving the notice required by Wright's deed, and the lapse of a year thereafter.

The court did not give the instructions as prayed for, but instructed the jury, upon the points covered by the prayer for instructions, in substance, as follows :

That notice, as claimed by the defendant, was not necessary to entitle the plaintiff to maintain the action :

That the question for the jury was whether the land described in the deeds under which the plaintiff claimed was the land on which the acts were done, which were alleged in the declaration to have been done by the defendant and were admitted by the defendant to have been done by him :

That to find the land described in the deeds, the starting point in the description must be fixed, and the description followed out from that point and located on the land ; that if the jury found that there was, in fact, a vein and but one vein of iron ore crossing the line between the Dewey and Wright lots, — that is, a vein which at that point was properly described as a vein of iron ore, — that would fix the starting point, and parol evidence would not be admissible to affect it. If the starting point was proved, could the description be followed out from it, and located on the land ? If there was more than one such vein crossing the line from which the land could be located, parol evidence was admissible to show which was intended :

That if there was no such vein of iron ore crossing the line, other questions came up. The first was whether the parties to the deed from Wright to Lucas agreed on certain monuments as determining the location of the vein. If, as contended by the defendant, the parties did agree on certain rocks as marking the location of the vein, from which it was not to vary, that would fix the point, and the line of the vein. But that if the parties did not so agree on the location of the vein, and if there was no vein of iron ore crossing that line, then, if there was a vein of mineral known to the parties, and supposed by them to be a vein of iron ore and to extend across the Wright lot, and if the vein did in fact extend to and cross the line mentioned in the deed, and was the same vein intended by the parties and called in the deed a vein of iron ore, that would be sufficient to fix the starting point, though the vein was in fact at that point a vein of mercury, and not of iron ore :

That if, on the whole evidence, the jury found that the defendant removed ore from the land described in the deed from Wright to Lucas, the plaintiff would be entitled to a verdict.

The jury returned a verdict for the plaintiff, and the defendant excepted.

*A. L. Soule,* for the defendant. If there was not a vein of iron ore on the line between Wright's land and the land of Dewey, and running thence northerly toward Melvin's land, there was no monument or starting point by which to identify the land in-

tended to be described in the deed from Wright to Lucas. The discovery, subsequent to the delivery of the deed, of the existence of a vein in the rock on that line, which was not a vein of iron ore there, although it was a continuation of the vein in the rock which was a vein of iron ore elsewhere, would not furnish a starting point or monument, by which to identify the land intended to be described. In order that a vein, not of iron ore on the line, should be regarded as the vein named in the deed as the vein of iron ore, it is necessary that it should be a vein whose existence and location were well and generally known and understood, and which was generally known as and called the "vein of iron ore," at that point. And if its existence was not thus generally known, and its recognition as a vein of iron ore was not thus general, the fact that such vein, not of iron ore, crossed the line, throws no light upon the deed. If, when the deed was made, there was not a vein in the rock on the line, universally or generally known as "a vein of iron ore," though not in truth such a vein, there was no such latent ambiguity in the deed as to admit parol evidence to explain its meaning and give it a construction. It is inoperative and void, because the monument, without which the land described cannot be found, does not exist. *Cook* v. *Babcock*, 7 Cush. 526. *Cornell* v. *Jackson*, 9 Met. 150. *Cleaveland* v. *Flagg*, 4 Cush. 76, 81. *Putnam* v. *Bond*, 100 Mass. 58. Any other view of the question renders nugatory the requirement of law that conveyances of land must be by instrument in writing.

Even if the position above stated were not correct, and it were correct, as ruled by the court, that, "if there was a vein of mineral known to the parties and supposed by them to be a vein of iron ore and to extend across the Wright lot, and if the vein did in fact extend to and cross the line mentioned in the deed and was the same vein intended by the parties and called in the deed a vein of iron ore, that would be sufficient to fix the starting point, though the vein was in fact at that point a vein of mercury and not of iron ore," still, if only one of the parties erroneously supposed the emery to be iron, such error would not make the deed valid, not open it to the construction permitted at the trial. The case finds that there was no evidence that Wright, the

grantor, knew anything about the character or location of any vein of iron or any other mineral. Unless the minds of both parties agreed in intending a particular vein, and in mistaking it for iron ore when it was some other mineral, there was no latent ambiguity to explain. And the case falls within the familiar principle which forbids the admission of parol-evidence to vary a written instrument. The rule of law that parol evidence is not admissible to make known the intention of the parties to a deed, as distinguished from the meaning of the language of the deed, is familiar.

The plaintiff had not such an interest in the premises (assuming for the argument that the deed from Wright to Lucas described the site of the defendant's mine) as would support the action. A conveyance of the minerals and ores in a tract of land gives the grantee an incorporeal hereditament — an estate in the mines — governed by the same rules with estates in land generally. *Adam* v. *Briggs Iron Co.* 7 Cush. 361, 367. *Green* v. *Putnam*, 8 Cush. 21, 27. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 102 Mass. 45. The deed of Wright to Lucas provides that the grantor shall have a year's notice previous to the grantee or his assigns commencing to dig on the premises. It is, therefore, in its terms, a conveyance of an estate of inheritance to commence *in futuro*, and, as such, void as a deed, but good as a covenant to stand seised. *Trafton* v. *Hawes*, 102 Mass. 533. The title, therefore, remained in Wright, under a covenant, on his part, to stand seised of the minerals and ores to his own use till one year after notice of an intention to commence digging, given by the grantee named or his representatives. Inasmuch as it was uncertain whether the notice would ever be given, Wright retained a base fee in the minerals and ores, which entitled him to dig and remove the minerals, and to grant the right to others to dig and remove them. 2 Bl. Com. 109. 4 Kent Com. 9.

Even if the foregoing statement of the effect of the deed is not correct, it is plain that the plaintiff had no right to possession of the premises, and cannot maintain this action. *Taylor* v. *Townsend*, 8 Mass. 411, 415. *Shepard* v. *Pratt*, 15 Pick. 32.

*G. M. Stearns & M. P. Knowlton*, for the plaintiff.

COLT, J.  The plaintiff's title to the ores and minerals in question depends upon the point fixed as a starting point in the description given in the deeds under which it claims.  That point is described as the " centre of the vein of iron ore " on the southerly side of the lot.  There was much controversy at the trial as to the existence of any such vein, and as to its true character and extent.  Under the instructions given, the jury must have found either (1,) that there was in fact such a vein of iron ore crossing the line at the point claimed by the plaintiff and answering the demands of the deed ; or, (2,) if there were more veins than one, that this vein was the one shown by the evidence to have been intended by the parties ; or, (3,) if there was no vein of iron ore, then that there was either a line of rocks agreed on as marking the course of a supposed vein, or a vein of other mineral supposed to be iron ore, which was the one intended by the parties and called iron ore in the deed.

It is not shown that the propositions submitted to the jury were not well adapted to, and sufficient to meet the different aspects of the case, or that there was not evidence enough to warrant a finding for the plaintiff on one or more of them.  The instructions asked for, so far as they differ from the instructions given, were properly refused.

In the evidence used at the trial, there is no invasion of the rule that parol evidence is not admissible to control the effect of the deed, and that conveyances of land can only be in writing. For the purpose of locating land conveyed by metes and bounds, resort must always be had to extrinsic evidence ; and when uncertainty or ambiguity arises in the application of the description to the subject matter of the conveyance, evidence of all the facts and circumstances of the transaction will be received for the purpose of ascertaining the real intention of the parties.  The sense in which the parties themselves used the ambiguous terms may be ascertained from their declared intention.  Bounds and monuments, which prove to have been indistinctly or inaccurately set out in the deed, may be established by proof that they were recognized as such by the parties.  It is only when the terms of the deed as applied to the land conveyed create no ambiguity, that

evidence of intention is excluded.   *Waterman* v. *Johnson*, 13 Pick. 261.   *Cook* v. *Babcock*, 7 Cush. 526.   *Sargent* v. *Adams*, 3 Gray, 72.   *Stoops* v. *Smith*, 100 Mass. 63.   *Putnam* v. *Bond*, 100 Mass. 58.

It was further objected that the plaintiff's property in the ores and minerals vested only at the expiration of a year after notice given of an intention to dig.   This is not the true construction of the deed.   The original owner of the entire estate conveyed to the grantee named, his heirs and assigns, all the iron ore, metals and minerals in and upon the tract described, and in the same deed granted the right to enter and dig upon the described tract, with rights of way, water privileges and other easements required in the preparation and carrying away of the ores and minerals granted; with a further stipulation providing for one year's notice before any digging should commence.   This is plainly a grant of an estate in the mines and minerals.

It is well settled that such an estate of freehold may be separated from the general ownership of the soil, by an exception in the nature of a reservation out of an estate granted, or by a direct grant.   When so separated, it becomes a distinct estate with all the incidents of a fee.   It is sometimes difficult to ascertain from the terms used whether a present estate in the mine is created, or only an incorporeal right, in the nature of an easement or *profit à prendre*.   There is no such difficulty here.   A present estate in the ore, metals and minerals, to the extent of the deposit in and upon the land described, is granted in fee and carved out of the general owner's estate.   The stipulation as to notice has reference to the enjoyment of those accessorial rights thought necessary or convenient in order to render available the estate granted.   It does not prevent the estate from vesting so as to give possession and a right of action against a mere trespasser to recover the value of ores or minerals taken away.   *Adam* v. *Briggs Iron Co.* 7 Cush. 361, 367.   *White* v. *Foster*, 102 Mass. 375.   Bainbridge on Mines, (1st ed.) 162.

*Exceptions overruled.*