SUSAN S. HATHAWAY & others *vs.* JOB T. WILSON.

Bristol.   Oct. 25. — Nov. 26, 1877.   LORD & SOULE, JJ., absent.

Commissioners appointed to set off dower and make partition among heirs made a
   return, which was accepted by the court, by which they set off to the widow a lot,
   on the north side of a tide-water cove, described by metes and bounds running "to
   the shore," and thence by courses and distances, which there was evidence tending
   to show corresponded with high-water mark, "to G. B.'s shore," which was in fact
   a parcel of marsh or meadow, and not part of the estate divided; also three lots
   of upland; "and also a privilege to have and take off the one third of the seaweed
   that may wash up on the shore of the lots by the cove and river, which privilege
   last mentioned is to be divided equally between " the widow and the two sons, " on
   all the land adjoining the river and cove; all which four lots of land, together
   with the privileges above described, we have set off to the said " widow for her
   dower.   The commissioners set off to one of the sons a lot on the south side of
   the cove, bounded " by the cove and river," " excepting two thirds of the shore or
   seaweed that may wash up on the land or shore ; " and did not otherwise dispose
   of the shore, between high and low-water mark, of the lot set off to the widow
   *Held,* that her title extended to low-water mark.

GRAY, C. J.   This is a writ of entry to recover a parcel of
land or flats in Fall River.   At the trial, both parties claimed
title under James Brightman, who died intestate in 1809, seised
of lands lying around a tide-water cove, and of other lands which
did not abut on tide water, and leaving four children, Susan S.
Hathaway, Hannah Sherman, Perez R. Brightman and George
Brightman, and a widow, Betsey Brightman, who afterwards be-
came Betsey Nichols.

In 1820, commissioners appointed by the Probate Court to
set off the widow's dower and to make partition of the rest of
the estate among the heirs made a return, which was approved
by the Probate Court, by which they set off to the widow for
life, as her dower, " one lot west of the highway, the north side
of the cove, bounded as follows, viz. :  Beginning at the north-
east corner by the wall and land of Edmund Brightman ; thence
north seventy-two degrees west fifteen chains to a corner; thence
north twenty degrees west three chains and seventy-five links to
a corner ; thence north seventy degrees west eight chains to the
shore; thence south twenty-six degrees west three chains and
fifty links ; thence south seventy degrees east three chains to
George Brightman's shore ; thence by said shore south twenty-
one degrees east eleven chains and fifty links to a tree ; thence

south fifty-five degrees west to the line of the south side of the cove; thence by said line to the road; thence by said road northerly to the first bounds; containing seventeen acres and sixty rods." They then set off to the widow, by metes and bounds, three other lots of upland, not touching the shore nor in question in this case; "and also a privilege to have and take off the one third of the seaweed that may wash up on the shore of the lots west of the road by the cove and river, which privilege last mentioned is to be divided equally between Betsey Nichols and Perez R. Brightman and George Brightman, on all the land adjoining the river and cove; all which four lots of land, together with the privileges above described, we have set off to the said Betsey Nichols for her dower or thirds in said farm.'

The commissioners then set off to Perez R. Brightman, the elder son, " one lot of land situated on the west side of the road and the south side of the cove," bounded " westerly and southerly by the cove and river," and further described by metes and bounds, " excepting two thirds of the shore or seaweed that may wash upon the land or shore;" also a wood lot on the east side of the road, the boundaries of which are not material, " both of which lots of land we have set off to the said Perez for his share." The lots set off to the other heirs did not touch tide water, and need not be particularly referred to.

The premises demanded in this action are the land lying between high and low-water mark on the north side of the cove, between the point where the boundary of the first lot set off to the widow, as described in the commissioners' return, first comes " to the shore," and the bound therein described as " George Brightman's shore."

There was conflicting evidence upon the question whether the line, as described by the commissioners, between these two points, corresponded with high-water mark, and there was evidence tending to show that the shore varied in width from sixty to eighty feet between high and low-water mark. The demandants introduced evidence that the land of George Brightman so referred to (which is not demanded in this action) was known as the George Brightman marsh, was owned by George at the time of James Brightman's death, and was a parcel of marsh or

meadow, including no beach, and extending to the tree mentioned in the assignment of dower.

The tenant, who holds deeds from the heirs of the land set off to the widow, contended that it extended to low-water mark, from the north line of the dower estate to the George Brightman marsh. The demandants, who are the heirs of James Brightman, contended that, according to the true construction of the commissioners' return, the widow's dower at this place only extended to high-water mark.

The justice of the Superior Court, before whom the case was tried without a jury, " ruled and found that, according to the true construction of the commissioners' report, in connection with other evidence in the case, the widow's dower took all the land, from the George Brightman marsh round to the north line of the dower, to low-water mark," and found for the tenant; and the demandants alleged exceptions.

By the law of Massachusetts, the proprietors of lands abutting on tide water have a title in the shore or flats to low-water mark, where the tide does not ebb more than one hundred rods, and may convey the upland and the flats, either separately or together. The strict legal meaning of the word " shore " is doubtless the land between ordinary high-water mark and low-water mark; and such is its common meaning as a definition of a boundary, when used by itself, and uncontrolled by other expressions in the deed or instrument of conveyance. But it may be shown by a consideration of the whole instrument, and of monuments referred to therein, to have been used untechnically, and without legal accuracy, as importing low-water mark. Anc. Chart. 148. *Storer* v. *Freeman*, 6 Mass. 435. *Jackson* v. *Boston & Worcester Railroad*, 1 Cush. 575, 579. *Saltonstall* v. *Long Wharf*, 7 Cush. 195, 201, 202. *Doane* v. *Willcutt*, 5 Gray, 328, 335. *Niles* v. *Patch*, 13 Gray, 254, 257.

Upon examination of the whole return of the commissioners, (the material parts of which have been already quoted,) we are of opinion that it manifests their intention and determination that the land set off to the widow as her dower should extend to low-water mark at the place in question. This is apparent from several considerations. It was the duty of the commissioners to divide the whole estate, and it is to be presumed that they have

performed that duty. *Doane* v. *Broad Street Association*, 6 Mass. 332. *Clark* v. *Parker*, 106 Mass. 554. They have not assigned the fee of the shore in question to any other person. The land set off to the elder son on the other side of the cove, bounded "by the cove and river," clearly extended to low-water mark. *Boston* v. *Richardson*, 105 Mass. 351, 355, and cases cited. The right to " the seaweed that may wash up on the shore of the lots west of the road by the cove and river," " on all the land adjoining the river and cove," thus including both the land set off to the widow and that set off to the elder son, is assigned to the widow and the two sons, one third to each. In the absence of any such assignment, such seaweed would belong to the owners of the shores respectively; and the question of the nature of the right so assigned is not now presented for determination. See *Cohasset Proprietors* v. *Tower*, 24 Law Reporter, 734; *Phillips* v. *Rhodes*, 7 Met. 322; *Cushing* v. *Worrick*, 9 Gray, 382; *Anthony* v. *Gifford*, 2 Allen, 549. But the fact that the commissioners made a distinct assignment of the seaweed on both shores of the cove leads irresistibly to the conclusion that they understood they had set off, and that they did set off, the title in each of the shores. And their assignment of rights in the seaweed on both shores is followed by the concluding statement, that " all which four lots of land, together with the privileges above described," are set off to the widow for her dower. It may be added that the use of the words " George Brightman's shore," to designate a parcel of land which the evidence introduced by the demandants tended to prove was above high-water mark, shows that the word " shore " was used by the commissioners in a loose and general way, and without exact appreciation of its technical meaning.

The conclusion is that, by the true construction of the commissioners' return, the land set off to the widow at the place in question extended to low-water mark, and consequently that the tenant has a better title than the demandants to the demanded premises.                                        *Exceptions overruled.*

*L. Lapham & J. M. Morton, Jr.*, for the demandants.

*J. Brown*, (*J. M. Wood* with him,) for the tenant.