MELVIN HASKELL vs. HERMAN W. FRIEND & others.

Essex.   April 1, 1907. — June 24, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Judgment*, Nonsuit.  *Deed.  Boundary.   Seashore.   Evidence*, Extrinsic affecting writings.  *Words*, " Shore."

A judgment of nonsuit in a writ of entry does not bar the plaintiff therein from setting up the same title which he had relied on in bringing that writ in defence of a petition by the defendant in such writ for registration of the title of the land for which the writ was brought.

A deed·of land on Squam River, an arm of the sea, contained in the clause of description the following boundaries: " Beginning at a point on the shore about three hundred feet southerly measured along the high water line from the southerly line of lot deeded . . . to H., . . . extended to the shore, thence running inland . . . east southeast . . . thence southwesterly on a line parallel with the shore . . . thence west northwest . . . to the shore, thence northeasterly along the shore . . . to the point of beginning, containing . . . more or less, and bounded westerly by Squam River."   There was evidence that the grantor had intended in the deed of other premises on the shore to H. to keep the shore· between high and low water open for a contemplated road.  *Held*, that the meaning of " along the shore," left ambiguous in the earlier part of the deed, was made plain by the later words "bounded westerly by Squam River," and that the title to the land between high and low water passed by the deed.

The rule of construction that a specific description will not be controlled by general words does not apply to cases where a description, intended to be specific, is ambiguous.

A deed of land on Squam River, an arm of the sea, contained the following description : " Beginning at a point on the shore . . . thence running inland . . . east southeast about 390 feet to a drill hole in the rock, thence southwesterly on a line parallel with the shore 300 feet to a drill hole in the rock, thence west northwest on a line parallel with the . . . northerly line about 410 feet to the shore, thence northeasterly along the shore 300 feet to the point of beginning."  At the hearing on a petition of the grantee for registration of his title, owners of land adjoining the locus contended that the bound " along the shore 300 feet to the point of beginning " should follow the meanderings of the shore line, and it appeared that, if it were so measured for 300 feet, the northerly and southerly boundary lines could not be parallel.  It also appeared that, before the conveyance, a survey of the locus was made by the parties to the deed according to which the bound in question was a straight line and did not follow the meandering of the shore line.  *Held*, that there was an ambiguity in the deed which rendered admissible evidence to show what in fact was intended by the parties, and that a finding in accordance with the preliminary survey was warranted.

A deed of land on Squam River, an arm of the sea, contained the following bounds : " Beginning at a point on the shore . . . thence running inland . . . southeast about 390 feet to a drill hole in the rock, then southwesterly on a line parallel with the shore 300 feet to a drill hole in the rock, thence west northwest on

a line parallel with the . . . northerly line about 410 feet to the shore, thence northwesterly along the shore 300 feet to the point of beginning." It appeared that the fourth bound was a straight line and not a line following the meanderings of the shore. At a hearing on a petition of the grantee for registration of his title, owners of land adjoining the locus contended that the second bound, "southwesterly on a line parallel with the shore 300 feet to a drill hole in the rock," meant a line meandering as did the shore line, but it appeared that, if such construction were adopted, the line would not terminate at "a drill hole in the rock." *Held,* that the bound should be construed to mean " on a line parallel with the shore line, which is 300 feet in length, 300 feet to a drill hole in a rock," a straight line.

PETITION for registration of title to land, filed in the Land Court October 23, 1905.

There was a hearing before *Davis,* J., who found for the petitioner and reported the case for determination by this court. The facts are stated in the opinion.

The case was submitted on briefs.

*H. T. Lummus & C. N. Barney,* for the respondents.

*E. S. Taft,* for the petitioner.

LORING, J. This is a petition for the registration of title to a parcel of land, and is before us on a report from the Land Court.

A plan of the locus and the other parcels of land referred to in the report would have been of great assistance.

The lot of land in question lies on the east shore of an inlet or arm of the sea known as Annisquam or Squam River, and forms part of the westerly portion of Wolf Hill.

Annisquam River flows north and south. Wolf Hill lies on its east shore and is stated in the report to be a "rounding promontory." The line of high water mark on the premises here in question forms a curve of which the convex side is towards the river.

The land conveyed by the deed in question is described as "beginning at a point on the shore about three hundred feet southerly measured along the high water line from the southerly line of lot deeded by me to John Hodgkins, Junior, March 1st, 1877, extended to the shore, thence running inland up the bluff east southeast, about three hundred ninety feet, to a drill hole in the rock, thence southwesterly on a line parallel with the shore three hundred feet, to a drill hole in the rock, thence west north-west on a line parallel with the first or northerly line about four hundred ten feet, to the shore, thence northeasterly along the

shore three hundred feet, to the point of beginning, and containing about . . . more or less, and bounded westerly by Squam River and on all other sides by other land of the grantor."

Orvis, the grantor in this deed, had previously conveyed to one Hodgkins a tract of land on Wolf Hill about three hundred feet north of the locus. That tract of land " did not run to the shore, but stopped forty feet short of it, ' forty feet of shore' being reserved for a road which Orvis contemplated building along the shore around the base of Wolf Hill."

In dealing with this question we have not taken into account the plans annexed to the petitioner's brief and referred to by him as Exhibits 7 and 8. They are not made part of the report.

1. There is nothing in the petitioner's claim that the judgment of nonsuit in the writ of entry brought by the respondents Herman W. and Edwin K. Friend against him is a bar to their defence to this petition. *Morgan* v. *Bliss,* 2 Mass. 111, 113. *Bridge* v. *Sumner,* 1 Pick. 371. *Ensign* v. *Bartholomew,* 1 Met. 274. *Hayes* v. *Collins,* 114 Mass. 54, 56.

2. The second question is that raised by the respondent Harry L. Friend, to whom the flats lying in front of the locus were subsequently conveyed if they were not conveyed to the petitioner's predecessors in title by the earlier deed to them. It is the petitioner's contention that these flats passed to the petitioner's predecessors and now belong to him. That contention was adopted by the Land Court.

The contention of this respondent is that the word "shore" means the space between high and low water mark and that the specific description of the locus given in the first part of the statement of the land conveyed by the deed cannot be enlarged by the subsequent words "bounded westerly by Squam River." His contention is that by the earlier part of the description the premises conveyed are bounded by high water since the land is described as " beginning at a point on the shore," thence by metes and bounds " to the shore, thence northeasterly along the shore three hundred feet to the point of beginning."

It is settled that a boundary "on the shore" does not include the space between high and low water mark if the word "shore" is used in its technical sense. *Storer* v. *Freeman,* 6 Mass. 435.

The same is true in case of a boundary on the "beach.", *Niles* v. *Patch*, 13 Gray, 254. *Litchfield* v. *Ferguson*, 141 Mass. 97. Also in case of a boundary on "flats." *Jackson* v. *Boston & Worcester Railroad*, 1 Cush. 575.

But each one of these words is a word of doubtful meaning arising from the fact that in one case the sea side and in another case the land side of the "shore," "beach" or "flats" may have been intended to be the boundary line, as was pointed out by Chief Justice Shaw in *Doane* v. *Willcut*, 5 Gray, 328, 335. The meaning to be attached to either one of these words in a deed must depend upon the instrument in which they occur taken as a whole (see *Hathaway* v. *Wilson*, 123 Mass. 359, where "beach" was held to include the shore to low water mark) and upon surrounding circumstances (as, for example, the fact that a monument referred to in case of a deed bounding on the shore was in fact at low water mark. *Storer* v. *Freeman*, 6 Mass. 435). So it has been held that a boundary on the "sea or flats" goes to low water. *Saltonstall* v. *Long Wharf*, 7 Cush. 195. The same is true of a boundary on the "sea or beach." *Doane* v. *Willcut*, 5 Gray, 328. See also in this connection *Niles* v. *Patch*, 13 Gray, 254, 257, 258 ; *Jackson* v. *Boston & Worcester Railroad*, 1 Cush. 575, 579.

When land bounds on the shore we have a question somewhat like the question which we have when land bounds on a way or other monument broader than a line. In such cases and here the question arises whether the face, the centre line or the whole width is included.

The words "bounded westerly by Squam River" are equivalent to a bound upon the sea, and if that had been the sole description of the boundary of the locus on the west the flats would have passed to the grantees. Of that there is no question. *Boston* v. *Richardson*, 105 Mass. 351, 355.

So if the two ends of the westerly boundary line had been described as points on the shore and in fact they had been on the line of high water mark and the westerly boundary had been stated to be Squam River in place of "along the shore," the flats would have passed. *Lunt* v. *Holland*, 14 Mass. 149. *Cold Steam Works* v. *Tolland*, 9 Cush. 492.

The words "along the shore" in the earlier part of the de-

scription are ambiguous, and the later provision that the locus is "bounded westerly by Squam River" makes plain what was left doubtful by the earlier statement. It is like a clause in a deed of land bounded by a way stating that the fee in the way is included in the conveyance.

The rule relied on by the respondent Harry L. Friend, that a specific description will not be controlled by general words, applies to cases where the specific description is unambiguous. See for example the statement of C. Allen, J. in *Birch* v. *Hutchings*, 144 Mass. 561, 563, cited by this defendant.

We are of opinion that the flats passed under the earlier deed in spite of the evidence as to the intention of Orvis to build a road along the shore around the base of Wolf Hill.

3. There are two other questions raised on this report. Both of them are raised by the respondents Herman W. and Edwin K. Friend, whose land bounds that of the petitioner on the east and south.

It was found as a fact in the Land Court that there is no dispute as to the two corners of the lot which make the two ends of the northerly boundary line. And it appears from the report that both ends of the easterly boundary line are agreed upon. The only dispute with respect to the corners of the lot is in respect to the location of the westerly end of the southerly boundary line.

These respondents' first contention is that the three hundred feet between the point of beginning and the southerly end of the westerly boundary line should be measured along the shore at high water mark, that is, following the curve of the shore and not in a straight line.

It appears from the report that the difference between the two ways of measuring this three hundred feet is that if the measurement is along the line of high water this end of the westerly line is twenty-eight feet short of the end of it if the measurement is made in a straight line.

It is stated in the description of the premises conveyed that the southerly boundary line is "parallel with the first or northerly line." And it appears that the distance between the two ends of the northerly lines measured in a straight line is three hundred and twenty one hundredths feet.

It follows that if the three hundred feet between the two ends of the westerly line are measured along the shore the north and south side lines cannot be parallel one with the other.

This constitutes an ambiguity which makes the fact that the bounds were in fact agreed upon and set upon the land admissible in evidence.  *Chester Emery Co.* v. *Lucas*, 112 Mass. 424. *Miles* v. *Barrow*, 122 Mass. 579.  *Barrett* v. *Murphy*, 140 Mass. 133.

It appears that the grantor's agent, having agreed to sell to the petitioner's predecessors in title a lot of land, "shortly before the deed " in question went on the land with one of the grantees and fixed the corners of the lot marking the two ends of the northerly boundary by drill holes, the northwest end being marked " B " in a boulder, and the northeast end being " a drill hole in the ledge."   The agreement was that the westerly boundary line of the lot should be " three hundred feet along the shore to a point about twenty feet south of the rocky headland."   The vendor's agent and the grantee in question " then measured along the shore to a rock . . . situated about forty feet to the southwest of the rocky headland.   In this rock a drill hole and the letter ' B ' were cut."   The report then continues : " From this rock they then measured easterly up the hill about four hundred and ten feet, and drove a stake, and shortly after the deed was passed a stone was inserted by one Hodgkins in place of this stake.   I find that said drill holes and said stake were located at the four corners of the upland claimed by the petitioner."

This drill hole is three hundred feet from the point of beginning in a straight line and is the location adopted by the Land Court.   We are of opinion that in this matter also the Land Court was right.

The second contention of these respondents is that the easterly boundary line is a curved line parallel with the shore and not a straight line.

We assume that these respondents would have been right in this contention had the description of this boundary line been " thence southwesterly on a line parallel with the shore three hundred feet," (as to which see *Hicks* v. *Coleman*, 25 Cal. 122 ; *Fratt* v. *Woodward*, 32 Cal. 219 ; *Winthrop* v. *Curtis*, 3 Maine,

110,) or if the description had been " thence southwesterly on a line parallel with the shore to a drill hole in the rock."

The difficulty here arises from the fact that the description is " thence southwesterly on a line parallel with the shore three hundred feet to a drill hole in the rock," and the further fact that if the line is measured parallel with the shore it is about three hundred and twenty-eight feet to the drill hole in the rock. We say about three hundred and twenty-eight feet because the westerly boundary line, if measured on the line of high water mark, is three hundred and twenty-eight feet.

It is apparent that there is an inconsistency in this description, and we are of opinion that the words " on a line parallel with the shore three hundred feet to a drill hole in the rock" must be construed to mean " on a line parallel with the shore line, which is three hundred feet in length, three hundred feet to a drill hole in the rock " ; and that the Land Court was right in holding that the easterly boundary line was a straight line.

*Decree affirmed.*