NATIONAL BISCUIT COMPANY *vs.* VAN COURTLANDT LAWRENCE.

Suffolk.   January 15, 1914. — May 19, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Boundary.   Flats.*

The description in a deed of a boundary of "a tract of land and flats," after giving a boundary on a certain street, was as follows: "Then turns and runs North Easterly bounding on my adjoining land and flats, this line running parallel with the dividing line between land of K, formerly the W lot, and my adjoining land to Mystic River." The "dividing line" referred to was a fixed and definite straight line. *Held,* that the line described was necessarily a straight line from the street named across the upland and flats to low water mark.

RUGG, C. J.   This is a petition for the registration of title to upland and flats lying in that part of Boston known as Charlestown between Medford Street and the low water line of the Mystic River.   The only question involved is the westerly boundary line of what is now the petitioner's estate.   The decision turns upon the interpretation to be given to a deed from one Hamblen to Waterman and another, made in 1847, of the central part out of a larger tract of land acquired by Hamblen, by deed of even date with the Waterman deed, from one Bigelow, under whom all the present parties take title.   Bigelow owned a tract of land between Medford Street and the Mystic River, with the flats appurtenant. The material parts of the description in the deed of Hamblen to Waterman are as follows: "A tract of land and flats . . . bounded and described as follows, to wit beginning on Medford street at a point distant North Westerly from land of W. A. Rice formerly of Aijah Hovey deceased, two hundred feet and runs North Westerly on Medford street on a curve therewith one hundred and fifty feet, *then turns and runs North Easterly bounding on my adjoining land and flats, this line running parallel with the dividing line between land of Benjamin Kimball, formerly the Welsh lot, and my adjoining land to Mystic River*," and thence easterly and southerly by lines not now material to the place of beginning.   The precise point to be decided is whether the westerly boundary line of this deed (indicated for convenience of identification in italics) is a straight line from Medford Street to low water mark or whether it is a

straight line only on the upland and as extended over the flats is in accordance with boundaries implied by law on flats adjacent to a cove and appurtenant to upland in the absence of any deeds affecting such line. The line in question is described as bounding both "on land and flats," and as "running parallel with the dividing line between land of Benjamin Kimball" and Hamblen's "adjoining land." This "dividing line" between the upland of Kimball and of Hamblen was a fixed and definite straight line. The words used import a continuous straight line from Medford Street to the Mystic River, dividing both upland and flats, parallel to the Kimball upland boundary line. A line which runs across land and flats parallel to a given straight line must also be straight, however far extended. The words "to Mystic River" do not constitute the high water mark as a terminus of the line in view of its earlier express projection across the flats. This is the natural meaning of the words employed. That they were used with an intelligent understanding of their meaning finds some confirmation in the circumstance that in the deed of even date from Bigelow to the grantor, Hamblen, of the larger tract of land, a part of which he was conveying by the deed in question, reference was made in express terms to a plan of the land drawn by one Shearer and recorded, upon which the boundary lines of the entire tract and of the three lots into which it then was divided, were shown as extended in straight lines from the upland through the flats to low water mark. Having taken title by a deed referring to this plan, it is probable that he had this plan in mind and acted on the assumption in making his deed to Waterman, that the upland boundary lines were protracted as straight lines across the flats to low water mark.

The division of the flats between the parties hereto, proprietors of upland adjacent to the seashore, thus is affected by the terms of the grant from Hamblen to Waterman, and therefore the rights of the parties are controlled by it. *Stone* v. *Boston Steel & Iron Co.* 14 Allen, 230. *Haskell* v. *Friend,* 196 Mass. 198. These considerations overcome the force of the ingenious argument urged in behalf of the respondent.

*Exceptions overruled.*

*V. C. Lawrence, pro se.*

*H. Wheeler,* (*W. L. Van Kleeck* with him,) for the petitioner.