MARY LAFLEUR LANGEVIN *vs.* BESSIE FLETCHER & others.

Hampden.    September 16, 1930. — January 5, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Deed*, Construction.  *Evidence*, Extrinsic affecting writing.  *Words*, "Bank of a brook."

In a petition for the registration of the title to a parcel of land, the issue was the boundary between that parcel and a parcel adjoining it on the south, which the petitioner had conveyed many years previously to a predecessor in title of the respondent by a deed describing the south boundary as "along . . . [the] Southerly bank" of a brook. The trial judge, who took a view, found that the brook, at the time of the deed, ran in a westerly direction at the bottom of a ravine, the sides of which rose sharply about forty feet to the general level of the surrounding territory; that substantially all traces of the brook and its bed had disappeared since the giving of the deed; and that its southern "bank," according to the "usual" meaning of that word, had been merely land a foot or two in width south of what had been the natural flow of the water.  The judge, having ruled that the meaning of the word "bank" in the deed was ambiguous, admitted evidence that the petitioner had told the draftsman of the deed that the land to be conveyed extended "to the top of the bank" on the south side of the ravine and that the mutual intention of the parties to the deed was that the petitioner should retain the south bank; found that the boundary in issue ran along the top of the slope on the south side of the ravine; and ordered the entry of a decree accordingly in favor of the petitioner.  Upon appeal by the respondent it was *held*, that

(1) The word "bank" in the deed was susceptible of meaning either the entire south slope of the ravine or merely the land a foot or two in width south of the natural flow of the brook; and there was no error in the ruling by the judge that the meaning of the word "bank" was ambiguous;

(2) The evidence as to the intention of the parties to the deed therefore was admitted properly;

(3) The finding by the judge as to the location of the boundary line was warranted; and the order for decree was affirmed.

PETITION, filed in the Land Court on April 20, 1929, for registration of the title to land in Ludlow.

The case was heard by *Smith*, J.  Material findings by.

the judge are stated in the opinion. The respondents appealed from an order by the judge for a decree in favor of the petitioner. The evidence was not reported.

*T. H. Kirkland,* for the respondents, submitted a brief. No argument nor brief for the petitioner.

FIELD, J. This is an appeal by the respondents from a decision of the Land Court upon a petition for the registration of land in Ludlow. The respondents own land adjoining on the south the land sought to be registered. The location of the boundary line between these two tracts of land is the matter in dispute.

The judge of the Land Court found as follows: " The petitioner formerly owned as one parcel the respondents' land and the present locus. She made a deed in 1891 to her brother of whatever land the respondents are now entitled to. . . . There lies between these two properties a sort of ravine running east and west. . . . Through the bottom of this ravine a small brook formerly ran westward. Some years ago the town built a sewer a few feet south of the brook, laying a fifteen inch drain pipe and connecting the brook with such sewer by a ten inch drain pipe . . . . Since these arrangements were completed substantially all traces of the brook and the bed of the brook have disappeared, except a small muddy area at . . . [one] corner. From the bottom of the ravine the land rises sharply on either side to the general level of the surrounding territory. It is unimproved, bush-grown and almost worthless land. The distance up these slopes on either side, as shown on the filed plan, indicates an average of about forty feet. The perpendicular depth of the ravine might be about twenty feet. There was no definite evidence of the breadth of the south bank of said brook, regarded as a strict legal term relating to riparian rights; but in view of the size of the sewer pipes used to dispose of its flow . . . such ' bank ' could have been only a foot or two wide." In the deed from the petitioner to her brother the easterly and northerly boundaries of the land conveyed are described as running " Northerly on west line of . . . Sewall Street to the southerly bank of a brook;

thence Westerly along said Southerly bank, to land of one Telesfore George."

The judge found that the boundary line between the land which the petitioner seeks to register and the land of the respondents runs along the top of the steep slope of the south side of the ravine, and ordered a decree accordingly. The respondents contend that the boundary line runs along the southerly edge of the stream at the bottom of the ravine. The case, therefore, turns upon the meaning of the words " Southerly bank," used in the deed, as applied to the " brook " which, as the judge found, " formerly ran westward " at the bottom of a " ravine running east and west " lying " between these two properties."

A question of evidence must be disposed of at the outset. The petitioner, her husband and the draftsman who drew the deed, were permitted to testify that in a conversation at the office of the draftsman, when they were present, with the petitioner's brother and his wife, who have died since, the petitioner told the draftsman " she had sold her brother some land on the south side of her property, extending to the top of the bank," the draftsman " inquired if she intended to convey to the brook. She replied in the negative, saying she intended to retain the bank as she might want to fence in both banks and keep some ducks along the brook. The grantee assented to this declaration of intention, and acting on such instructions . . . [the draftsman] drew the deed." The respondents excepted to the admission of this testimony.

The evidence was admitted rightly if the deed from the petitioner to her brother, when applied to the land, was ambiguous with respect to the boundary line in question. *Sargent* v. *Adams,* 3 Gray, 72, 78–79. *Chester Emery Co.* v. *Lucas,* 112 Mass. 424, 434. *Miles* v. *Barrows,* 122 Mass. 579, 581. *Haskell* v. *Friend,* 196 Mass. 198, 203. *Temple* v. *Benson,* 213 Mass. 128, 134. The judge ruled, in substance, that there was such an ambiguity as to the meaning of the word " bank " in the description of the boundary line. He found that " it would be hard for a stranger to

go upon the land, observe the situation there appearing, and not conclude that the description in the deed was intended to stop at the top of the steep slope on the south side of the ravine separating the two properties," and stated that he did not "think it would be natural for anyone standing over the ravine in Sewall Street with the deed in hand to suppose the 'south bank' meant anything other than the space between the bottom of the ravine and the land on the general level above it." As these findings were made upon evidence that is not reported and after the judge had taken a view of the premises, we cannot say that they were not warranted. The uncertainty of interpretation of the deed, held to constitute an ambiguity therein, arose from the difference between the boundary line indicated by these findings and that indicated by the "usual" meaning of the word "bank," according to which, as the judge found, "only a foot or two of land south of the natural flow of the brook" would be excluded from land conveyed.

There was no error in the ruling that this deed, as applied to the land, was ambiguous. A grant of land bounded by the bank of a stream ordinarily excludes the bed of the stream (*Hatch* v. *Dwight,* 17 Mass. 288, 298), and, like boundaries by the "shore," "beach" or "flats" (see *Boston* v. *Richardson,* 13 Allen, 146, 154, 155; *Haskell* v. *Friend,* 196 Mass. 198, 200–201, and cases cited; see also cases collected in Note to *Commonwealth* v. *Roxbury,* 9 Gray, 451, 503, 524–525), excludes the bank of the stream, if such bank has any width apart from the bed of the stream, though a different meaning "may be shown by a consideration of the whole instrument, and of monuments referred to therein." *Hathaway* v. *Wilson,* 123 Mass. 359, 361. *Haskell* v. *Friend, supra.* The decisions in this Commonwealth do not disclose that the word "bank" has any technical or "usual" meaning, though, by analogy to the words "shore," "beach" and "flats" (see *Storer* v. *Freeman,* 6 Mass. 435, 439; *Niles* v. *Patch,* 13 Gray, 254, 257; *Litchfield* v. *Ferguson,* 141 Mass. 97), it may be that a boundary by the bank of a stream

usually means a boundary by highwater mark. It remains true, however, that " the meaning to be attached " to the word " bank " " in a deed must depend upon the instrument . . . taken as a whole . . . and upon surrounding circumstances." *Haskell* v. *Friend, supra,* at page 201. See *Oklahoma* v. *Texas,* 260 U. S. 606. The words " southerly bank of a brook," in the deed from the petitioner to her brother, could be used without perversion to signify the entire slope on the south side of the ravine, though much of it was never water washed. As was said in *Peoria* v. *Central National Bank,* 224 Ill. 43, 55, " no one doubts that the word ' bank ' could be properly used as applying to such a steep acclivity " — in that case " a steep acclivity fifty or sixty feet above the ordinary water line in a fresh water river." If the words " southerly bank " have this meaning, a boundary line running " to " and " along " it ordinarily would exclude such " bank " from the tract conveyed, so that the boundary line would run at the top of the slope. The difference between this interpretation of the deed and an interpretation based upon a use of the word " bank " which may be more usual, creates an ambiguity.

With the evidence of the conversation at the draftsman's office before him, the judge clearly was warranted in finding that the boundary line between the land sought to be registered and the respondents' land adjoining it on the south was at the top of the slope on the south side of the ravine. His finding, therefore, stands. G. L. c. 185, § 15. *Bessey* v. *Ollman,* 242 Mass. 89, 91. *Bucella* v. *Agrippino,* 257 Mass. 483, 486.

*Order for decree affirmed.*