SARAH F. CASTOR *vs.* ANNIE F. SMITH & others.

Norfolk.  March 12, 1912. — April 1, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Deed.  Boundary.  Words,* "Beach."

Two of the boundaries in a deed of land by an arm of the sea were, "southerly by
the upper edge of the beach, southeasterly by land of the grantor, there measur-
ing about twelve feet as the fence now stands." The deed also stated, "No part
of the beach is hereby conveyed." Fifteen feet back from the mean high water mark
a grass grown bank from six to fifteen feet high rose abruptly at an angle of about
forty-five degrees from a smooth sandy beach. Heavy spring tides rose to the
foot of the bank. The fence mentioned in the deed came to the edge of the bank
and no farther. *Held,* that there was nothing in the circumstances to give to the
word "beach" any other than its ordinary meaning, that is, the space between
ordinary high and low water mark; and therefore that the land between the
bank and mean high water passed by the deed.

PETITION, filed in the Land Court on December 1, 1908, for the
registration of the title of land of the petitioner on Town River
Bay in Quincy.

In the Land Court the case was heard by *Davis,* J.  It appeared
that in 1861 one Andrews owned a tract of land including both that
of the petitioner and that of the respondents; that he conveyed a
small triangular piece from the westerly side thereof to the prede-
cessor in title of the respondents, the description of the boundaries
in the deed reading as follows: "Westerly by meadow of the town
of Quincy, southerly by the upper edge of the beach, southeasterly
by land of the grantor, there measuring about twelve feet as the
fence now stands, and northeasterly by the highway to a stake.
No part of the beach is hereby conveyed."

It further appeared that the petitioner was vested with title to
all the land lying between the southerly line of the respondents' lot
as thus defined and low water mark. "A grass grown bank which
rises at an angle of about forty-five degrees extends along all the
southerly side of the respondents' lot. This bank is about six
feet high at the southeasterly corner of the respondents' lot, and
gradually rises to a height of about fifteen feet at the south-
westerly corner. The foot of the bank forms a sharp angle with the

surface below, which is almost level and extends at a slight decline to low water mark. The bank is covered with grass down to the foot thereof, at which point the grass stops sharply and beyond which there is no vegetation. The soil from that point to low water mark consists of sand, and presents a surface substantially smooth and uniform. At mean high water the tide rises to a point about fifteen feet from the foot of the bank; the regular monthly high tides rise to within seven or eight feet of that point; the heavy spring tides rise to the foot of the bank. The fence referred to in the deed from Andrews above described extended from the line of the highway to the foot of the bank. There has never been any permanent fence or other permanent structure or barrier below the foot of the bank at any point in the area in dispute or separating it from the land retained by Andrews and now owned by the petitioner."

The petitioner sought to have registered a title to the beach extending to the foot of the grass grown bank above described. The judge of the Land Court ruled that she was entitled only to so much of the beach as lay below mean high water mark; and the petitioner alleged exceptions.

The case was submitted on briefs.

*R. G. Dodge*, for the petitioner.

*G. H. Tinkham & S. E. Duffin*, for the respondents.

DeCourcy, J. The only question involved in the petitioner's requests and in the ruling of the court is, what is the boundary line between the respondents' lot on the south and the adjoining land of the petitioner?

In its usual signification "the beach," in grants of lands bounded upon tidal waters, means the space between ordinary high and low water mark, or the space over which the tide usually ebbs and flows. Unless terms occur in the deed indicating a different intent, a conveyance of land describing the beach as its boundary does not include the beach, but extends to the line of mean high water mark. *Niles* v. *Patch*, 13 Gray, 254, 257. *Haskell* v. *Friend*, 196 Mass. 198. Any doubt as to whether the original owner Andrews intended his conveyance to extend to the sea side of the beach, that is to low water mark, was removed by making the southerly boundary line the "upper edge of the beach," and by expressly providing that "no part of the beach is hereby conveyed."

On the other hand the shore above high water mark was included in the deeds through which the respondents acquire their title. The fact that this upland is covered by the heavy spring tides does not make it a part of the beach within the fixed and definite meaning of that word in the deeds. If the respondents' predecessor in title intended to make the grass grown bank the southerly bound of the land conveyed, presumably he would have so stated in the deed.

*Exceptions overruled.*