ELLA M. ALLEN *vs.* CLARENCE I. WOOD & others.

Bristol.    October 26, 1925. — June 8, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Sea Shore.    Boundary.*

An appeal from the Land Court brings before this court only questions of law apparent upon the record; in the absence of a report of the evidence before the Land Court, findings of fact cannot be revised.

At the hearing in the Land Court of a petition for the registration of the title to land, the petitioner has the burden of proving the title he seeks to have registered.

A deed is to be construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed.

On December 7, 1912, the selectmen of a town adjudged that common convenience and necessity required that a road be laid out running southerly over a point of land jutting into the sea to a bar which lay between the point and land which at high water was separated from the mainland by water over the bar.    Four days later land on the point was conveyed by a deed containing the description: "Beginning at the northwest corner of the land hereby conveyed in line of highwater mark on the west beach, so called, at a point in said highwater line . . . thence easterly . . . to the westerly line of the public way leading to . . . [the land south of the bar]; thence southwesterly in the westerly line of said public way to its intersection with the line of highwater mark on said west beach, so called; thence northerly in line of high water mark on said west beach to the place of beginning."    The town in March, 1913, accepted the way laid out by the selectmen the previous December.    In 1924, owing to accretion from alluvial deposits, high water mark had moved seaward all about the point and did not at any point intersect the way as laid out in 1912, but was southerly therefrom.    The grantee in the deed above described sought in the Land Court registration of the title thereby conveyed.    The judge who heard the case did not find in terms nor indicate on a plan the place where the road laid out by the selectmen and high water line met in 1912.    *Held,* that

(1) The location of the southeastern corner of the land described in the deed was determined by the point of intersection of high water mark with the westerly side of the public way which the selectmen had delineated in their layout;

(2) Whether the layout of the way to the bar was legal in whole or in part was immaterial on the issues raised by the petition;

(3) It being well established, in the case of accretions to land along the seashore, that "the line of ownership follows the changing water line," it was proper for the monument stated in the deed as the point

of intersection of the west side of the public way and high water mark, to move southerly as accretions took place;

(4) But such line should not move southerly further than the southerly point of the way as the selectmen laid it out; for south of that there could be no intersection;

(5) As to a determination of the location of the southerly bound of the tract and of that boundary of flats added by the movement of the high water mark, it was proper for the judge, the beach not being a cove, to determine the angle of turning at the southeast bound by running a line from it to a point off shore where radial lines, run at various points at right angles to the beach, met.

PETITION, filed in the Land Court on June 13, 1924, and afterwards amended, for registration of the title to certain land at the easterly end of Horseneck Beach in Westport.

Horseneck Beach extends easterly from the mouth of Westport River, in a curve generally concave, about three and five-eighths miles to a point on which is the land, registration of title to which was sought by the petitioner. South of that point and connected with it by a bar is Gooseberry Neck, a seventy-four acre tract of land surrounded on all sides by deep water except where the bar connects. The southerly end of the bar in its original state was exposed at low tide only. A plan of the locus of the land which is the subject of the petition is given below. Gooseberry Neck is south of the land shown thereon.

The petition was heard in the Land Court by *Smith,* J. Material facts found, rulings made and a decree ordered by

the judge are described in the opinion.  Both parties appealed
from the decree.

*A. E. Seagrave,* for the petitioner.

*H. W. Connolly,* for the respondent.

SANDERSON, J.  This is a petition to register the title to
land at the east end of Horseneck, so called, a beach resort
in the town of Westport.  The petitioner claims under a
deed to her, dated December 11, 1912, from the respond-
ents Irving L. Wordell, Charles A. Cornell and John H.
Cornell.  The description in this deed is in the following
terms: "Beginning at the northwest corner of the land
hereby conveyed in line of highwater mark on the west
beach, so called, at a point in said highwater line, which is
350 feet southerly from the south line of contemplated
Ocean Avenue; thence easterly in line parallel with said
south line of contemplated Ocean Avenue 80 feet to the
westerly line of the public way leading to Gooseberry Neck;
thence southwesterly in the westerly line of said public way
to its intersection with the line of highwater mark on said
west beach, so called; thence northerly in line of high water
mark on said west beach to the place of beginning.  To-
gether with the right, in common with others, to use said
beach for bathing, boating, driving, fishing and walking."

The land which the petitioner now seeks to have registered
is a much larger tract than that literally described in the deed.
This additional land "has become attached to the original
tract by accretion from alluvium deposits along the seaward
side, which deposits have been making up since . . . 1912,
when some of the respondents and their predecessors in
title . . . raised the height of, and attempted . . . to build
a roadway over, the bar connecting Horseneck aforesaid
with Gooseberry Neck, a seventy-four acre tract of land
lying to the southward and surrounded on all sides by deep
water except where said bar connects, the southerly end of
which bar in its original state was exposed at low tide only."

The respondents Wood, Mahoney, and Tucker contend
that they are the owners of Gooseberry Neck and the bar,
under a deed to them dated June 20, 1923.  They also con-
tend that by virtue of a deed in November, 1924, from

Wordell, one of the petitioner's grantors, they own an interest in the fee and soil of West Shore Road, opposite the petitioner's land and running south to the bar, and in land between the road, the bar, the sea, and the petitioner's land. It was agreed that the petitioner's grantors owned the fee of the soil of West Shore Road when the deed to her was given. There was no evidence of any change of title of grantors except that Lanie J. Cornell succeeded to the title of John H. Cornell, deceased, by virtue of a provision in his will, and that Wordell made the conveyance before mentioned. The petitioner's grantors made no argument and filed no brief in this case.

The land east of and opposite the locus lying between the road and sea on the east and extending both further north and south was acquired by the town of Westport in 1916 for a town landing. The town did not contest the petitioner's claim. At the date of the petitioner's deed no road east of her land had been constructed, but at a meeting of the town of Westport in March, 1912, the layout by its selectmen of a public way, the westerly line of which is indicated on the plan by the words "Street line claimed by respondent," was accepted. Because of some error, and for other reasons which did not appear, this layout proved to be unsatisfactory and the road was not constructed. A new layout by the selectmen was made in the latter part of 1912, and accepted by the town in March, 1913. Before the date of the deed to the petitioner, there had been a petition to the selectmen to resurvey and relocate the public way, and notices of the intention of the selectmen to lay out a way had been left at the places of abode of owners of land affected and a public notice had been given of a meeting to be held on December 7, 1912, at which meeting it was adjudged that common convenience and necessity required the layout of a road as it was later constructed and now exists. This road and the location of other objects and lines material to this case are shown on the accompanying plan.

The judge of the Land Court found that when the petitioner's grantors gave her the deed, all parties thereto in-

tended to convey to the present west line of the West Shore Road, called by them in the deed "the public way." Certain buildings on the petitioner's land and on the line of this road as shown on a plan were erected between the years 1913 and 1919. The respondents have waived their contention that the petitioner's easterly boundary was the line of the way in the earlier layout. The judge of the Land Court took a view of the premises in company with counsel.

The judge ruled that "the petitioner's boundary on the west is limited to high water line and that she has no title to the foreshore between high and low water as claimed, but that she has as appurtenant to her land such rights over the foreshore as were granted in her said deed, which are not inconsistent with the public rights under the colonial ordinance, to be exercised in common with all others entitled thereto": and he also found and ruled that the petitioner's easterly boundary is the west line of the West Shore Road as shown on the plan.

As to the division of the new land formed by accretion, the judge found that so far as the petitioner was concerned it arose from natural causes, and ruled that the lines of ownership of this land are to be determined as in the ordinary case of a division of flats. The judge also found that the petitioner's grantors conveyed a piece of land bounded on the north by the line shown on the plan and accurately described in the deed; on the east by the west line of the public way as laid out by the selectmen of Westport on December 7, 1912, and later accepted by the town; and on the west by high water line. He further ruled "that high water line and the point of intersection of high water line and the west line of West Shore Road are monuments in the petitioner's deed and moved westward and southward as accretion took place so long as such intersection could be maintained." He found that the layout of that road ran to the bar, that this terminus, as fixed by the evidence, was three hundred seventeen and fifteen hundredths feet south of the northeast corner of the locus as shown on the plan; and that this point "is the utmost extent of petitioner's street line because the point of contact aforesaid cannot be maintained beyond this station.

High water line is now further south as shown on the filed plan, but there is no public way for it to intersect." The boundary lines over the land acquired by accretion were found to be: "On the north side the line shall continue west in the same direction as her eighty foot deed line to high water mark." This was the line claimed by the petitioner and the judge found that by adopting it no harm would result to owners west of the locus who had received only constructive notice of the proceedings. The west line is to be the line of high water as it may exist from time to time. In fixing the south line the judge found that the shore of Horseneck Beach does not form a cove, and that in the division of the foreshore of this beach the lines of division should run normal to the average coast line, and determined that the southerly line of the petitioner's land runs in a southwesterly direction from the station at the south end of the town way, as previously determined, to high water line, making an interior angle of one hundred twelve degrees fifty-two minutes with the west line of the town way at its south end. The judge divided the shore line of Horseneck Beach into three parts; the easterly including the locus formed an arc of a circle with a radius of about two miles. Radial lines drawn from any point along this part of the shore will all meet at a common point in the center of that circle; drawing a radial line from the "bar" as used and determined on the town plan of layout to the center of the circle will make an interior angle of one hundred twelve degrees fifty-two minutes hereinbefore mentioned. A decree was ordered for the petitioner in accordance with the decision and plan; and appeals were taken by the respondents and also by the petitioner.

The petitioner contends that her southerly line should be continued beyond the point marked "bar" on the plan to the point where the westerly line of West Shore Road continued would meet high-water mark. The respondents contend that the southerly point of the petitioner's land is limited to the place where the westerly line of West Shore Road and high water line met at the time of the conveyance to her in 1912.

"An appeal from the Land Court brings before this court

only questions of law apparent upon the record. Findings of fact cannot be revised." The petitioner has the burden of proving the title to be registered. *Bessey* v. *Ollman,* 242 Mass. 89, 91. "Every deed is to be construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed." *Bessey* v. *Ollman, supra.* *Haskell* v. *Friend,* 196 Mass. 198. Accretions to land bounding on a river or the sea belong to the owners of the adjoining land. *Deerfield* v. *Arms,* 17 Pick. 41. "When the line between water and land bordering thereon is changed by the gradual deposit of alluvial soil upon the margin of the water — the owner of the land ordinarily becomes entitled to the new land thus formed." Tiffany on Real Property, 2093. The judge did not find in terms nor indicate on the plan the place where West Shore Road and high water line met in 1912. We are not in this case bound to determine whether the layout of the way to the bar was legal in whole or in part. It is to be assumed that a municipality has not authority to lay out a way beyond high water line. *Marblehead* v. *County Commissioners,* 5 Gray, 451, 452. *N. Ward Co.* v. *Street Commissioners,* 217 Mass. 381, 384. The question is, whether the parties had in mind, in bounding on the westerly line of the public way, the way as it was laid out by the selectmen. The judge has found that the parties intended to bound the land on this way which was later accepted and constructed. It is well established in the case of accretions to land along the seashore, that "the line of ownership follows the changing water line." *East Boston Co.* v. *Commonwealth,* 203 Mass. 68, 75. This rule seems to be based upon presumed intention. The parties bounded their lot on the east by the line of the public way to its intersection with the line of high water mark on west beach. This being so, there is no legal objection to the monument made by this intersection moving as accretions take place, just as the rest of the high water front line moves, and the judge was right in ruling as he did on this point. He also correctly ruled that this movement could not go further south than the southerly limit of the

street as laid out because there could be no intersection of the street line and high water mark below that point.

The remaining question is, whether the direction of the petitioner's line from the southerly end of the street as laid out was correctly determined. The principle governing the division of flats among adjoining owners of upland is applicable to the division of alluvium accretions. See *Wonson* v. *Wonson,* 14 Allen, 71, 85. In *Trustees of Hopkins Academy* v. *Dickinson,* 9 Cush. 544, 549, the court, in referring to the rule for fixing standards for demarcation of boundaries of real estate which are fluctuating and changeable, said: " . . . the rule is equitable, and as certain as the proverbially variable nature of the subject-matter will admit; and, in adapting it to the varying circumstances of different cases, a steady regard must be had to the great principle of equity, that of equality." The object of apportioning accretions is that they shall be so apportioned as to do justice to each owner, in the absence of a positive prescribed rule and of direct judicial decision to guide, and their division on a non-navigable river frontage is so made as to give each relatively the same proportion in his ownership of the new river line that he had in the old. *Deerfield* v. *Arms,* 17 Pick. 41, 45.

If a person owns uplands bounding on the seashore it is a "conclusion of law . . . that he owned the flats lying in front of such upland to low water mark, if less than one hundred rods, or if the tide ebbs further, then to the extent of one hundred rods." *Porter* v. *Sullivan,* 7 Gray, 441, 442. In front means "directly to the sea from which the tide flows, by lines as nearly as practicable perpendicular to the line of shore, or the line of ordinary high water mark, meaning by this, not the line of high water at spring tides, but at ordinary tides. It is obvious from this, that if the shore be convex, the flats attached to it, in proceeding seaward, will expand; if very prominent, the flats will be of a fanlike shape." *Porter* v. *Sullivan, supra.* Wherever it is practicable the width of flats owned is equal to the width of the lot at high water mark. *Gray* v. *Deluce,* 5 Cush. 9. *Stone* v. *Boston Steel & Iron Co.* 14 Allen, 230.

The court in extending the petitioner's south line as

described in its decision has made an equitable and just allotment of the newly formed land to the petitioner, and in so doing has not encroached upon the rights of the respondents.

*Order for decree for petitioner affirmed.*