HARRIET B. McMAHON *vs.* ROSCOE BLANCHARD & another.

Berkshire.　September 18, 1928. — November 26, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Way*, Private.　*Deed*, Construction.　*Boundary*.

A master, to whom was referred a suit in equity to enjoin the defendant from maintaining a fence or other obstruction to the use of a right of way bordering on the plaintiff's land, found facts from which he concluded that, by the measurements in deeds from a common grantor of predecessors in title of the parties and in mesne conveyances, he could not find whether the boundary of the way coincided with the boundary of the plaintiff's land. The report was confirmed by an interlocutory decree and, by a final decree, the bill was dismissed. Upon an appeal by the plaintiff from the final decree it was *held*, that

(1) Not measurements, but monuments when certain or capable of being made certain, are to govern in the construction of deeds;

(2) Examining the deeds and applying the above rule, it was clear that the boundary of the way coincided with the boundary of the plaintiff's land.

In the suit in equity above described, it appeared that from a tract of land practically rectangular and facing a street on the south, the common grantor of predecessors in title of the parties had conveyed to strangers to the suit three parcels, with two of which defined rights in a private way to the street were given. He retained the fee in the way, and lived in a parcel at the southeasterly corner of the tract, facing forty feet on the street and bordering on the west on the way, and had a barn on the northwesterly parcel to and from which he went over the way. In 1920 he conveyed his house lot to the plaintiff by a deed in the statutory short form making no mention of a right of way. In 1922 he conveyed the barn lot to the defendant with the right of way defined as in the previous deeds which mentioned it. In 1927 he conveyed to the defendant all his remaining right in the entire tract "subject to all liens, assessments, rights and titles in force on this property." The next month the defendant erected the barrier, the maintenance of which the plaintiff sought to have enjoined. The bill was dismissed and the plaintiff appealed. *Held*, that

(1) The way when used by the common grantor in connection with the lot afterwards conveyed to the plaintiff was a way of convenience and not of necessity;

(2) The facts did not give rise to a grant to the plaintiff of an easement of passage by implication;

(3) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on August 3, 1927, averring in substance that the defendants on July 19, 1927, had erected a fence running seventeen feet north-

erly and southerly along the plaintiff's real estate "in and upon" a right of way to which she was entitled on her westerly boundary, and praying that the defendants be required to remove the fence and be enjoined from obstructing the way.

The suit was referred to a master. Material findings by the master are stated in the opinion.

No plan nor sketch was included in his report or in the record, and he found, "I find no plans recorded or otherwise of the property."

The sketch set out below, however, delineates the bound-

aries of parcels and ways referred to in the opinion as their measurements were described in the various deeds quoted there and in the master's report. The deeds to the plaintiff and her immediate predecessors in title do not mention the private way at the west of that lot in any way, either as a boundary or with respect to an easement.

If the easterly right of way was the westerly boundary of the plaintiff's lot, and that way was twenty feet wide, as the deeds described it, then the measurements in the deeds from the common grantor of the parties of the parcels delineated on the sketch would show the line AB (the entire frontage on Summer Street) to be one hundred sixty feet long. The master, however, describing the property which the common grantor purchased, stated that it had a frontage on Summer Street of ten rods; and later found that that frontage was one hundred sixty-four and seven tenths feet. Thus, the record presented two questions: whether the plaintiff's lot bounded on the private way west of it, and whether, if it did, the plaintiff had any right to use that way.

The suit was heard by *Burns*, J., by whose order there were entered an interlocutory decree confirming the master's report and a final decree dismissing the bill. The plaintiff .appealed from the final decree only.

The case was submitted on briefs.

*C. W. Faulkner*, for the plaintiff.

*J. I. Donna*, for the defendants.

PIERCE, J. This is a bill in equity wherein the plaintiff seeks to have removed a fence, erected by the defendants about six inches from the westerly boundary of the plaintiff's land. In their answer the defendants admit they erected the fence described in paragraph six of the bill of complaint, but say said fence was erected upon premises belonging to them. The cause was sent to a master "to hear the parties and their evidence and report his findings to the court, together with such facts and questions of law as either party may request." No exception was taken to the master's report and it was confirmed by an interlocutory decree.

Subsequently a final decree was entered dismissing the bill. The plaintiff appeals from the final decree only.

The appeal presents the single question, whether on the master's findings relief should have been granted the plaintiff. *American Stay Co.* v. *Delaney*, 211 Mass. 229. *Grossman* v. *Lewis*, 226 Mass. 163. *Raynes* v. *Sharp*, 238 Mass. 20, 24. From the findings it appears that, under date of April 29, 1909, James C. Hall and Edward Hall conveyed a certain tract of land on the northerly side of Summer Street, in Pittsfield, Massachusetts, to George C. Leidhold; this property had a frontage on Summer Street of one hundred and sixty-four and seven-tenths feet and a depth of one hundred and forty-eight and five-tenths feet. By a series of conveyances George C. Leidhold conveyed portions of the land to various grantees. In this way the original tract was divided into five parcels, three having a forty-foot frontage on Summer Street and two situated in the rear.

The first conveyance was to Henrietta C. Riley, by deed dated April 8, 1910. By this deed title to the westerly lot fronting on Summer Street was passed. In it and in the mesne conveyance which ultimately vested the title to this lot in Luigi Ruberto and wife no mention is made of any right of way either as an appurtenance or as a boundary. The front line of this lot on the northerly line of Summer Street ran easterly forty feet from the southeast corner of land of one Charles C. Wright.

On May 11, 1910, Leidhold mortgaged the central front lot, which is hereafter referred to as land conveyed by Max Baker to Israel Boxer on May 27, 1927, to the Berkshire County Savings Bank. This mortgage contains the first mention of any right of way. Its language is as follows: "Together with a right of way for all the usual purposes and to be enjoyed in common with the grantor, his heirs and assigns in, over and upon three strips of land, the first being twenty (20) feet in width east and west and extending northerly from Summer Street to premises heretofore mortgaged by the grantor to the grantee, the easterly line of said right of way being the westerly line of the parcel herein conveyed;

the second strip being also twenty (20) feet in width and extending northerly from Summer Street to other land heretofore mortgaged by the grantor to the grantee the westerly line thereof being the easterly line of the premises herein conveyed and the third strip being ten (10) feet in width and connecting the two strips above named at the northerly end thereof, the southerly line of the said last mentioned strip being the northerly line of the premises hereby conveyed."

On May 1, 1911, Leidhold conveyed this lot to Joseph Ressler; it is described in the deed as follows: "Beginning at a point in said northerly line of Summer Street which is sixty (60) feet easterly from the southeast corner of land now or formerly of one Wright; thence running northerly in a line parallel with the easterly line of land now or formerly of Wright ninety (90) feet; thence easterly in a line parallel with the northerly line of Summer Street aforesaid forty (40) feet; thence southerly in a line parallel with the first course described ninety (90) feet to said northerly line of Summer Street; thence westerly in said northerly line of Summer Street forty (40) feet to the place of beginning. Together with a right of way to said grantee his heirs and assigns forever in common with others for all the usual purposes and at all times over two strips of land twenty (20) feet in width running northerly from said Summer Street one hundred (100) feet, the southeast corner of the easterly right of way, being forty (40) feet westerly from the southeast corner of the grantor's premises and the southwest corner of the westerly right of way being forty (40) feet easterly from the grantor's southwest corner and also over a strip of land ten (10) feet wide connecting the two above named strips at their northerly end, said last named strip being ten (10) feet in width north and south and its northerly line being the northerly line of said two above named rights of way extended easterly and westerly to meet each other."

Under date of April 24, 1911, Leidhold conveyed the easterly rear lot, now owned by Ludger Gauvreau to Benson M. Lathrop and Maud Lathrop. All the deeds affecting this particular parcel contain the following reference to said right

of way: "Together with a right of way for all the usual purposes and at all times over two strips of land twenty (20) feet in width, running from the northerly line of said Summer Street one hundred (100) feet; the southeast corner of the easterly right of way, being forty (40) feet westerly from the southeast corner of the grantor's premises and the southwest corner of the westerly right of way being forty (40) feet easterly from the grantor's southwest corner and also over a strip of land ten (10) feet in width connecting the two above named strips at the northerly end, said strip being ten (10) feet in width as aforesaid, north and south, and its northerly line being the northerly line of said two above named rights of way extended easterly and westerly to meet each other."

By deed dated June 14, 1911, Leidhold conveyed the northwesterly corner of the tract to Joseph and Celina Letourneaue, "Together with a right of way to said grantees, their heirs and assigns forever in common with others, for all the usual purposes and at all times over three (3) strips of land to and from the granted premises to Summer Street, which rights of way are fully described in my deed to Joseph H. Ressler, dated May 1, 1911, recorded in Book 361, Page 597." This parcel was later reconveyed to Leidhold and he conveyed it on July 24, 1922, to Roscoe H. Blanchard and his wife, May Blanchard, the defendants in this bill of complaint. The deed to Blanchard and his wife described a right of way in the same language as is used in the deeds of Leidhold to Ressler and to Lathrop.

Leidhold, on May 29, 1911, conveyed to Joseph and Celina Letourneaue the most easterly forty feet of the Hall property, "To have and to hold the granted premises with all the privileges and appurtenances therein belonging to said Letourneaue's, their heirs and assigns." By deed dated March 30, 1915, the Letourneaues conveyed this property to Eda E. F. and Freida Leidhold. They in turn on January 12, 1916, conveyed the parcel to George C. Leidhold, "To have and to hold the granted premises with all the privileges and appurtenances thereto belonging to the said George C. Leidhold, his heirs and assigns." Leidhold conveyed this parcel to Harriet B. McMahon, the plaintiff, by deed dated Sep-

tember 4, 1920. There is no mention of a right of way as an appurtenance or as a boundary in any of the deeds relating to this parcel. The master states: "I find no plans recorded or otherwise of the property."

On June 8, 1927, Leidhold conveyed by quitclaim deed "to Roscoe Blanchard *et al.,*" the following property; "This property on Summer Street is known as the Hall property afterwards known as Leidhold property, so called, bounded on the east by the property of Ade E. Adams and on the west by property formerly owned by Charles H. Wright, subject to all liens, assessments, rights and titles in force on this property. Meaning and intending hereby to convey all our rights, title and interest if any, in the above described property." The master finds that "the easterly line of the easterly right of way begins at the southwesterly corner of the property now owned by the petitioner." He states, "I am unable to find whether or not the easterly line of the easterly right of way and the westerly line of the petitioner's property adjoin each other." He further finds "as a fact that the easterly right of way has been quite generally used by the trademen for the purpose of leaving various commodities with the tenants who occupy the petitioners property as well as the tenants of all abutting owners. This condition existed before the petitioner purchased the property and all during the time the premises were occupied by Mr. Leidhold . . . Mr. Leidhold used the said right of way for the purpose of getting to his barn which formerly stood on the Blanchard property and . . . as owner of the property, used all the rights of way generally for the purposes consistent with his ownership of the entire tract . . . George C. Leidhold lived on the premises now owned by the petitioner between the following dates: January 12, 1916 to January 4, 1920." He states that he is "unable to find what particular part of the land between the easterly line of the Boxer property and the westerly line of the McMahon property has been so used by Leidhold and the trademen."

The case presents two problems, (1) the exact location of the easterly passage and (2) whether there is any easement appurtenant to the land of the plaintiff over the right of way.

Notwithstanding the statement of the master that he is unable to find whether or not the easterly line of the easterly right of way and the westerly line of the plaintiff's property adjoin, we think the documentary evidence is sufficient to enable this court to determine the position of the easterly line of the easterly passage.  *Allen* v. *Wood*, 256 Mass. 343, 349.  Every conveyance which mentions the rights of way describes the easterly passage as being twenty feet in width and one hundred feet in length.  In several of them the southeast corner of the easterly passage is described as being forty feet westerly from the southeast corner of the grantor's, Leidhold's, premises.  The forty feet thus referred to is the frontage on Summer Street of the plaintiff's premises.  Another deed describes the easterly passage as being twenty feet wide, with the westerly line of it coinciding with the easterly line of the Boxer lot.  As a matter of fact the distance between these lines is found by the master, in substance, to be twenty-four and seven-tenths feet.  In all the descriptions of the passageway in the deeds its length is designated as one hundred feet from the northerly line of Summer Street.  It follows that the easterly line of the easterly passageway must begin at the southwest corner of the plaintiff's premises; that the line shall be projected in a northerly direction at such an angle with the northerly line of Summer Street that it will at the end of one hundred feet reach to, and not beyond or short of, the southerly line of the land of Gauvreau at the northerly line of the easterly passageway.  These conditions are met if the easterly line of the passageway coincides with the westerly line of the plaintiff's land.  The easterly line on the data given by the deeds necessarily is the westerly line of the plaintiff's premises.  The statement in the deeds that the width of the easterly passageway is twenty feet is an evident mistake, and the side lines of the way are to be ascertained by the rule that not measurements, but monuments when certain, or capable of being made certain, are to govern in the construction of deeds.  *Morse* v. *Rogers*, 118 Mass. 572. *Stefanick* v. *Fortona*, 222 Mass. 83, 85.  In the light of all the material circumstances, the easterly passageway may be

described as beginning at the southwest corner of the plaintiff's land, thence running northerly along the westerly line of her land one hundred feet to the land of Gauvreau, thence westerly on the southerly line of Gauvreau's land twenty-four and seven-tenths feet, thence southerly on the easterly line of the Boxer lot one hundred feet to Summer Street, thence to the place of beginning.

Leidhold retained the title to the land over which he had granted the rights of way described in the deeds above referred to. The deed to the defendants conveyed to them all the right, title and interest which Leidhold had when the deed was delivered. Leidhold as the owner of the fee of the last parcel sold had the right to use the ways granted by him in connection with that parcel because he owned the fee in the land, not because the passageways were appurtenant to the parcel retained by him. The law is well settled that land cannot be appurtenant to land as such, because a corporeal thing cannot be appurtenant to another corporeal thing. The deed of Leidhold to Harriet B. McMahon, dated September 4, 1920, in statutory short form described the premises conveyed as follows: "Beginning at the southwest corner of land supposed to belong to one Adams, formerly of one Gamwell, and running thence northerly in the westerly line of said land ninety-five (95) feet; thence westerly in a line parallel with the said northerly line of Summer Street forty (40) feet; thence southerly in a line parallel with the first mentioned course ninety-five (95) feet to the said northerly line of Summer Street; thence easterly in said northerly line of Summer Street forty (40) feet to the place of beginning." In his report the master says: "I am unable to find in any of the deeds relating to this parcel any mention of a right of way either as an appurtenance or as a boundary."

The easterly passageway was a way of convenience and not of necessity to the parcel conveyed to the plaintiff. Other than the fact that the grantor used the passage in connection with his use of the parcel retained by him and subsequently conveyed to the plaintiff, there are no facts which show a purpose of the grantor to grant the plaintiff a right of way

over the easterly passageway. *Orpin* v. *Morrison*, 230 Mass. 529, 533. There is no principle either at law or in equity under which the plaintiff can maintain her claim that said right of way passed as an appurtenance to her property, although it is not referred to in her deed or in the deeds of her predecessors in title as an appurtenance or boundary. *Cummings* v. *Perry*, 169 Mass. 150, 155.

*Decree affirmed with costs.*