JAMES C. BURKE *vs.* COMMONWEALTH & others.

Plymouth.   October 4, 5, 1932. — May 23, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Boundary,* "On the ocean," "On the beach," Change by alluvial deposit, Change by private way becoming public.  *Accretion.*

A town in 1890 made a deed of land with the following description: "Lot No. 37 situated on the east side of Bay Street or Avenue, as shown on a . . . [certain plan], containing nearly 4800 square feet bounded as follows:  Northerly on Lot No. 38, 80 feet, being separated from it by an Avenue;  Easterly on the Ocean, 60 feet;  Southerly on Lot No. 36, 80 feet;  Westerly on Bay Avenue, 60 feet."   Thereafter stone breakwaters were built by the Commonwealth under statutory authority and later, from natural causes aided by the building of the breakwaters, accretions formed which by 1931 extended the high water mark of the ocean approximately seven hundred feet easterly from its location when the deed was made.  *Held,*  that
    (1) The ocean was a monument which controlled courses, distances and computed contents named in the deed;
    (2) The particular description in the deed controlled the reference to the lot by number on the plan;
    (3) The easterly boundary of the lot was the line of low water;
    (4) That boundary followed the changing low water line;
    (5) The circumstance, that the building of the breakwaters by public authority aided the operation of natural causes in the deposit of the accretions, did not modify the general rule that the littoral proprietor is entitled to his proportionate share of such accretions.
Owners of other lots on the shore above described, which were bounded easterly "on the beach," had title only to high water mark, although it was *assumed* that they were entitled to share in the accretions.
Upon a petition in the Land Court by the owner of lot 37 above described for registration of his title, it appeared that the line of the high water mark at the time of the original deed under which through mesne conveyances the petitioner had title was practically a straight line and that the area added by accretion was practically triangular in shape.  The trial judge in 1931 ordered a decree applying the general rule as to accretions by drawing a straight line according to the original

general course of the shore at high water mark and by extending the side lines of the petitioner's lot at right angles to such straight line to the new shore line. Owners of other lots on the shore, who were respondents and whose lands by such decree, owing to the triangular shape and position of the area of the accretion, would no longer be bounded on the beach on the east but bounded by the breakwater, contended that the side lines through the land added by accretion should be drawn at such an angle as to give their lots the same proportion of the high water line of the new beach as they had had of the old. *Held*, that

(1) The fact that the Commonwealth had located a breakwater in front of the respondents' lots had no bearing on the equitable division of the land formed by accretion;

(2) The fact that the respondents were cut off from the natural beach as a result of accretions caused in part by the breakwaters constructed by the Commonwealth in the exercise of its rights for the improvement of navigation could have no controlling effect in a determination of the equitable division of the land created by such accretions;

(3) There was no merit in the contention of such owners.

After the conveyance of lot 37 by the description above quoted, the "Avenue" separating it from lot 38 became a public way. *Held*, that the petitioner under his description acquired no title in fee in such public way.

PETITION for the registration of title to land, filed in the Land Court on December 8, 1930.

The petition was heard by *Corbett*, J. Material facts found by him and set forth in his decision, and the decree ordered by him, are described in the opinion. The town of Marshfield and the owners of other lots of land on the same shore as the petitioner's appealed.

*J. M. Graham*, for the respondents Ring and others.

*A. S. Feinberg*, for the respondent town of Marshfield, submitted a brief.

*M. Collingwood & H. R. Maraghy*, for the petitioner, submitted a brief.

RUGG, C.J. This is a petition to register title to land on Duxbury Beach in that part of the town of Marshfield called Green Harbor. The respondents are the Commonwealth, the town of Marshfield, and certain owners of other lots on the beach. The rights of the Commonwealth were guarded in the decision and it is no longer a contestant. Facts not now in dispute and material to the grounds of this decision

are these: The town was the owner of a considerable number of lots shown on a plan dated in 1883 and filed and recorded in 1895 with Plymouth County deeds. The selectmen of the town were authorized to convey lots shown on the plan. By deed dated March 26, 1890, and duly recorded, the selectmen conveyed to one Cole a lot as shown on the plan, title to which by mesne conveyances has come to the petitioner. The description in the original deed, repeated in substance in the intervening conveyances, was of this tenor: "Lot No. 37 situated on the east side of Bay Street or Avenue, as shown on a Plan of Lots on Duxbury Beach in Town of Marshfield drawn by C. W. Howland and to be on file in the Registry of Deeds for said County of Plymouth and in the Selectmen's Office in said Town, containing nearly 4800 square feet bounded as follows: Northerly on Lot No. 38, 80 feet, being separated from it by an Avenue; Easterly on the Ocean, 60 feet; Southerly on Lot No. 36, 80 feet; Westerly on Bay Avenue, 60 feet." Since the time of the deed to Cole a substantial area of land has gradually formed by accretion so that the present normal high water mark of the ocean in front of the lot of the petitioner is approximately seven hundred feet easterly of the high water mark of 1890. The building of stone breakwaters was commenced in 1898 and completed in 1899 under St. 1898, c. 469, for the purpose of improving Green Harbor by protecting the entrance channel. These breakwaters were built on both sides of Cut River. Most if not all of the area added by accretion easterly of the petitioner's land and the other beach lots has been created gradually since the building of the breakwaters. The formation of this new land arose from natural causes so far as the petitioner is concerned. This new land is similar in character to beach property along the South Shore and is partly covered by beach grass and vegetation such as commonly grows along the shore front. The inference was drawn by the trial judge that the causes of this accretion were aided by the building of the breakwaters. The coast line at the time of the deed to Cole in 1890 was practically a straight line and the lines over the foreshore to low water line would

be normal or at right angles to the same. The present high water mark is considerably further to the east. As it extends north and south, it meets the 1890 line and the area of land formed by accretion is somewhat triangular in shape.

The petitioner claims title to low water mark so as to include that part of the area added by accretion lying easterly of his lot and adjacent thereto. The town does not contest the petitioner's right to register title to lot 37 as shown on the plan mentioned in his deed, but does contest his right to register title to any land lying easterly and between it and the low water mark of the ocean. The answers of the Commonwealth and the town put in issue the question of the ownership of so much of the land which the petitioner seeks to have registered as was formed by accretion.

Upon these facts the judge by decision filed May 19, 1931, found and ruled "that the petitioner has acquired title to land formed by accretion easterly of said lot 37 as shown on plan Exhibit B. His easterly boundary will be 'by the ocean.' The petitioner has no title to the breakwaters or jetties built by the Commonwealth or to the land under the same. As, however, other lot owners on said plan may also have acquired land by accretion they must have notice of these proceedings before the petitioner's side lines can be determined. Petitioner to furnish names and addresses of such lot owners. The petitioner's land is subject to any and all public rights legally existing in and over the same below mean high water mark but there is no public right of bathing in such a way as to make use of the petitioner's land between high water mark and low water mark."

The other lot owners were notified. Thirty-five of them appeared and filed similar answers to the effect that they had acquired land by accretion and were entitled to such equitable division of the land so formed as the circumstances and physical features of the shore line at present existing will allow. The lots owned by these persons as shown in deeds given by the town bounded "on the beach"; the lot owned by the petitioner bounded "on the Ocean." By de-

cision filed on October 23, 1931, the judge apportioned the land formed by accretion as follows: "Assuming that" the other lot owners "have acquired title to land so formed it is plain that a determination of the side lines of locus may have a bearing of the side lines of their respective lots under the doctrine of equitable division of such lands. As the high water line" on the Howland plan "was practically a straight line I find and rule that lines drawn at right angles from said 1890 line to the present shore line would be an equitable division of the land of the proprietors which was made by accretion." The town appealed from each decision by the judge, and the lot owners from that of October 23, 1931.

Appeals of this nature bring before this court only questions of law apparent on the record. Findings of fact cannot be revised and must be accepted as true. G. L. (Ter. Ed.) c. 185, § 15. *Bessey* v. *Ollman*, 242 Mass. 89, 91. *Willard* v. *Kimball*, 277 Mass. 350, 358. If upon all the facts thus displayed and the reasonable inferences of which they are susceptible, the ultimate finding cannot be justified as matter of law, it must be set aside. *Hartt* v. *Rueter*, 223 Mass. 207, 212.

The deed under which the petitioner holds title gives the easterly boundary as "on the Ocean, 60 feet." A boundary of this description "with the aid of our ordinance of 1641, not only includes all above high-water mark, but also extends to low-water mark when it does not exceed one hundred rods." *Green* v. *Chelsea*, 24 Pick. 71, 77. *Saltonstall* v. *Proprietors of Long Wharf*, 7 Cush. 195, 200. *Boston* v. *Richardson*, 105 Mass. 351, 354. *Haskell* v. *Friend*, 196 Mass. 198, 201. The flats lying between the lot of the petitioner and the sea passed by the deed although the description as to both the quantity of land conveyed and the length of the lines would have been satisfied by application to the upland alone. *Mayhew* v. *Norton*, 17 Pick. 357. *Burnham* v. *Hoyt*, 216 Mass. 278. "Whenever, in the description of land conveyed by deed, known monuments are referred to as boundaries, they must govern; although neither courses, nor distances, nor the computed

contents, correspond with such boundaries." *Davis* v. *Rainsford,* 17 Mass. 207, 210. *Cashman* v. *Bean,* 226 Mass. 198, 203. *Holmes* v. *Barrett,* 269 Mass. 497, 499–500. This principle governs the description of the petitioner's land as given in the original and intervening deeds. The reference in the original deed was not merely to the number of the lot on the plan but was followed by a particular description including the ocean as a monument. The particular description is controlling over the reference to the lot number on the plan. *Smith* v. *Strong,* 14 Pick. 128, 133. *Lovejoy* v. *Lovett,* 124 Mass. 270, 274. *Wellington* v. *Cambridge,* 214 Mass. 35, 41. *Oliver* v. *Kalick,* 223 Mass. 252, 255. It follows that the original conveyance under which the petitioner claims carried the land to low water mark. *Storer* v. *Freeman,* 6 Mass. 435. *Porter* v. *Sullivan,* 7 Gray, 441, 445.

It is settled that where accretions are made to land along the seashore "the line of ownership follows the changing water line." *East Boston Co.* v. *Commonwealth,* 203 Mass. 68, 75. *Allen* v. *Wood,* 256 Mass. 343, 349. *Lambert* v. *Vare,* 88 N. J. Eq. 81, 88; affirmed, 89 N. J. Eq. 211. The circumstance that the building of the breakwaters by public authority may have aided the operation of natural causes in the deposit of the accretions, as inferred by the trial judge, does not modify the general rule that the littoral proprietor is entitled to his proportionate share of such accretions. This point is covered by the principle stated in *Adams* v. *Frothingham,* 3 Mass. 352. It was the precise decision in *Lovingston* v. *St. Clair,* 64 Ill. 56; affirmed *sub nomine St. Clair* v. *Lovingston,* 23 Wall. 46. *Steers* v. *Brooklyn,* 101 N. Y. 51. The contentions of the town, therefore, cannot be supported.

The other respondents, lot owners who are contesting the claim of the petitioner to the accretion, have no title to low water mark. Their lands bound "on the beach." Such a description does not carry the flats. *Castor* v. *Smith,* 211 Mass. 473. *Niles* v. *Patch,* 13 Gray, 254, 257. *Litchfield* v. *Scituate,* 136 Mass. 39, 48. It is assumed in their favor for the purposes of this decision that they are entitled to share

in the accretion under the doctrine of *Allen* v. *Wood*, 256
Mass. 343. In that case the title of the petitioner extended
only to high water mark and did not include the foreshore
between high and low water mark; yet the petitioner was
held entitled to share in the accretions.

' The line of the high water mark at the time of the original
deed under which the petitioner has title was practically a
straight line. In such circumstances the rule as to division
of accretions is that a straight line is drawn according to that
general course of the shore at high water mark and the side
lines of all the estates are extended at right angles with it
toward low water mark. *Wonson* v. *Wonson*, 14 Allen, 71,
79. *Sparhawk* v. *Bullard*, 1 Met. 95, 106. *Knight* v. *Wilder*,
2 Cush. 199. *Porter* v. *Sullivan*, 7 Gray, 441, 443. Respond-
ent lot owners contest the application of this rule to the case
at bar on the ground that it would violate the great principle
that such division ought to be made with due regard to
equality so as to do justice to each owner. *Allen* v. *Wood*,
256 Mass. 343, 350. The underlying reason for their objec-
tion appears to be that when the lines are shown in conform-
ity to the general rule, their lands will be no longer on the
beach but bounded by the breakwater. They insist therefore
that the lines should be drawn at such an angle as to give
their lots the same proportion on the high water line of the
new beach as they had on the old. This contention cannot
be supported. The fact that the Commonwealth has located
a breakwater in front of these lots has no bearing on the
equitable division of the land formed by accretion. The
owner of upland without flats may be deprived of access to
the sea and the ebb and flow of the tide by the erection of
structures on the flats. *Davidson* v. *Boston & Maine Rail-
road*, 3 Cush. 91, 105. *Henry* v. *Newburyport*, 149 Mass. 582,
585. "Even a title in flats by grant from the colony or Com-
monwealth is subject, so long as they have not been built
upon, to the authority of the legislature, for the protection
of the harbors and of the public right of navigation." *Boston*
v. *Richardson*, 105 Mass. 351, 362. *Home for Aged Women* v.
*Commonwealth*, 202 Mass. 422, 427. *Crocker* v. *Champlin*,
202 Mass. 437, 441. *Jubilee Yacht Club* v. *Gulf Refining Co.*

245 Mass. 60. The fact that the respondent lot owners are cut off from the natural beach as a result of accretion caused in part by the breakwaters constructed by the Commonwealth in the exercise of its rights for the improvement of navigation can have no controlling effect in a determination of the equitable division of the land created by such accretion. As to these lots the breakwaters must be treated as the shore line. *Jones* v. *Johnston*, 18 How. 150, 158. *Hathaway* v. *Milwaukee*, 132 Wis. 249, 254. The contention of the respondents asserts claim to a portion of the accretion in no sense in front of their lands so far as the original shore line is concerned. Owners should not be required to share the natural shore line confessedly opposite their estates merely because the shore line of other owners is now limited and bounded by an artificial structure erected by the Commonwealth. If the land of such other owners were bounded by a structure erected by the Commonwealth involving no question of accretion, it could hardly be contended that such land would be entitled to a share on the natural beach front at the expense of lands originally and continuously fronting on the beach. The circumstance that accretion has intervened does not alter the application of the legal principle. The decision of the trial judge was right in refusing to adopt this contention of the respondent lot owners.

In the deed under which the petitioner holds title his lot was bounded "Northerly on Lot 38 . . . being separated from it by an Avenue." This avenue is now a public way. Under this description the petitioner acquired no title to the fee in the street. *Codman* v. *Evans*, 1 Allen, 443, 446. The petitioner's lot is therefore bounded by its side lines as laid out and these lines fix his title to the accretion.

*Decisions of May 19, 1931, and October 23, 1931, affirmed.*