CARL L. MOREHARDT & another *vs.* WALTER F. DEARBORN, trustee.

Plymouth. November 6, 1942. — January 25, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Real Property,* Boundary, Easement, Judgment. *Judgment.*

A decree, entered in 1937 in a suit in equity affecting the title to land, did not bind the real owner of the land or his successors in title where he had no notice of the suit, the bill stated that the record owner of the locus was unknown, and the decree was not recorded under the provisions of G. L. (Ter. Ed.) c. 184, § 17.

Upon an appeal without a report of the evidence from a decision of the Land Court, stated therein to be rendered upon "all the evidence," no error was disclosed in a finding and ruling that the owner of a

registered parcel with southern and eastern boundaries described as running "easterly 150 feet to Humarock Beach so-called to a cedar stake; thence turning at right angles and running northerly 100 feet to a cedar stake" with an easement in common "south" of such parcel but not including "title to the beach at the east," had "no rights of accretion [over land] to the east or south of" said parcel and "no easements over such land to the east of the east line of" such parcel "and such line extended south."

PETITION, filed in the Land Court on October 24, 1940. The case was heard by *Smith,* J.

The sketch shown *post,* 42, includes the material features of a plan which was in evidence at the hearing in the Land Court and a copy of which was a part of the printed record.

The decision of the Land Court on the petition of the present respondent registering title to lot B contained the following:

"The deed under which the petitioner claims title from said trustees was a deed given in 1894, describing the boundary lines as 'commencing at a cedar stake about 50 feet from North River on a right of way 50 feet wide (now River Street) and at the southwesterly corner of the lot conveyed, and running easterly 150 feet to Humarock Beach so-called to a cedar stake; thence turning at right angles and running northerly 100 feet to a cedar stake . . . .

"The petitioner therefore acquired title to a tract extending from the right of way easterly at a given distance to certain stakes at the beach, leaving title to the beach at the east, to the remaining land at the south and to the parcel between the lot so described and the river at the west, in the trustees. . . .

"So far as the land claimed by the petitioner . . . is concerned, I find no title in the petitioner other than as above stated, together with an easement of a right of way in the present River Street, with the exclusive right to use 100 feet of the river front beyond the right of way and opposite the petitioner's land, and the right to have all of the land south of the petitioner's land as far as the town line 'kept open in common'. . . ."

The bill in equity described in the opinion was filed in the Superior Court in the county of Suffolk and was there

numbered 45496. The record in the instant case stated, with respect to the "papers" in that case, "These papers may also be referred to."

J. G. *Bryer*, for the respondent.

A. S. *Feinberg*, for the petitioners.

Cox, J. The respondent Dearborn, hereinafter referred to as the respondent, appealed from the decision and decree of the Land Court. The decision is printed in the record. The judge found that the petitioners had title proper for registration to the land claimed, subject to a certain easement, and a decree was ordered.

The petitioners sought to have two parcels of land registered, but we are concerned only with the second parcel described in the petition. This parcel is bounded on the north by registered land standing in the name of the respondent and designated as lot B. It is bounded on the west by said lot B, at the northeasterly corner of which lot the line turns and runs easterly to the Atlantic Ocean. The easterly bound of so much of the locus as is here in-

volved is the Atlantic Ocean. It is unnecessary to refer to the other bounds. From this partial description, it will appear that the respondent's lot B is completely bounded on its southerly and easterly sides by part of the locus in question, and the controversy involved is whether the respondent has any rights over so much of the land that is sought to be registered as lies between the easterly line of said lot B, together with the extension of this line southerly, and the Atlantic Ocean. This controversy may be said to have arisen from the language of a deed in 1894, in the respondent's chain of title describing lot B, to one Taylor: "All the land south of the lot hereby conveyed is to be forever kept open in common." When the title to lot B was registered, the decree, dated April 27, 1934, declared that there was appurtenant to the lot "the right to have all of the land south of said parcel as far as the town line kept open in common." The petitioners in the case at bar admitted in their petition, in effect, that the land that lies exactly south of lot B must be kept open.

The extent of the servient estate seems to have been defined by the decree registering title to lot B. Nevertheless, the respondent, who was the holder of the certificate of title to this lot, attempted later to have the appurtenant rights "reproclaimed and enlarged" to extend east, as well as south, over all the land included in the pending petition. He brought a bill in equity in 1936, and a decree was entered on February 19, 1937. The record owner of the locus here involved was stated to be unknown. No notice by publication was given. The defendants summoned were one Smalley and one Thomas. There was no service on Smalley, and the bill as to her was dismissed. Although the master in that suit found that neither defendant owned any land south of lot B, the final decree stated that the "plaintiff [the present respondent] has the right to have all the land as far as the town line lying south of the southerly boundary line of his land and south of a straight line which is an extension in a general northeasterly direction of his said southerly boundary line to mean high water mark remain open." It is apparent from this decree, if it is of

any validity, that the respondent's easement was over the area immediately south of his lot, and also over quite an extensive area to the southeast.

The petitioners in the case at bar rightly claim under one Murphy, who was the record owner of the locus from 1922 to 1940. Murphy was not a party to the equity suit and had no notice of it. In the petition for the registration of the title to lot B, the petitioner, the present respondent, claimed to have acquired rights by accretion to land immediately south of the lot. But the judge who heard the case found that this claim could not be sustained. He also found that the petitioner in that case acquired title to a tract extending from its westerly bound "easterly at a given distance to certain stakes at the beach, leaving title to the beach at the east, [and] to the remaining land at the south" in others. He also found "no title in the petitioner [the present respondent] other than as above stated . . . and the right to have all of the land south of the petitioner's land as far as the town line 'kept open in common' . . . ."

Reference has already been made to the deed of 1894 to one Taylor, in which what is now referred to as lot B is described as follows: "commencing at a cedar stake about 50 feet from North River on a right of way 50 feet wide and at the southwesterly corner of the lot hereby conveyed and running easterly 150 feet to Humarock Beach so-called to a cedar stake; then turning at right angles and running northerly 100 feet to a cedar stake; then turning at right angles and running westerly about 160 feet to said right of way; then turning and running southerly on said right of way to the point of beginning . . . All the land south of the lot hereby conveyed is to be forever kept open in common."

The trial judge in the present petition ruled that the decree in the equity suit was void as to the record owner of the locus at that time and as to the petitioners claiming under him. He also found and ruled "(it being a mixed question of law and fact) on all the evidence before . . . [him] that the respondent . . . has no rights of accretion to the east or south of lot B . . . over land claimed by the

petitioners and no easements over such land to the east of
the east line of said lot B. and such line extended south
in the same direction to the . . . [town] line." He also
denied thirteen requests for rulings of the respondent except
for a portion of one, and stated that the "rulings" may be
referred to. The requests are printed in the record. See
*McCarthy* v. *Lane*, 301 Mass. 125, 127, 128. None of these
requests for rulings has been argued specifically, but in so
far as they are involved by the respondent's contention, we
consider them.

The present respondent, who was the plaintiff in the bill
in equity hereinbefore referred to, sought to enjoin the de-
fendants there named from erecting structures on the prem-
ises south of his land, lot B, and to require them to remove
structures already erected. The decree in that suit has
already been referred to. It is a fundamental rule that
interested parties are entitled to notice of some sort of
proceedings where their rights or interests are involved in
litigation. *Pennoyer* v. *Neff*, 95 U. S. 714. *Shores* v. *Hooper*,
153 Mass. 228, 230, 231, 232, 233. *Tyler* v. *Judges of the
Court of Registration*, 175 Mass. 71, 73–76, 88, 90. *Security
Bank of New York* v. *Callahan*, 220 Mass. 84, 89. See *Harris*
v. *Starkey*, 176 Mass. 445, 447; *Snow* v. *Blount*, 182 Mass.
489, 491; *Mitchell* v. *Mitchell*, 312 Mass. 154, 163–164.
It is unnecessary to consider what steps must be taken in
all cases by a party to protect his rights where a judgment
or decree has been rendered without notice to him or knowl-
edge on his part, inasmuch as we are of opinion that the
case at bar comes within the provisions of G. L. (Ter. Ed.)
c. 184, § 17, which provides as follows: "A judgment or
decree, at law or in equity, rendered after June eighth,
eighteen hundred and ninety-two, affecting the title to real
property, shall not have any effect except against the parties
thereto, their heirs and devisees and persons having actual
notice thereof, unless a certified copy of the record thereof
has been recorded in the registry of deeds for the county or
district where the land lies, with a memorandum of the town
where the land lies and a description thereof sufficiently
accurate for identification if the record of the judgment or

decree does not give those particulars. If a notice of the pendency of the action has been duly recorded in the registry of deeds, the record of the judgment or decree may be made within sixty days after its rendition, and the entry of an ordinary attachment of real property in the registry of deeds shall be considered notice of the pendency of the action." There is nothing in the record before us to indicate any compliance with these statutory provisions. The title to the real property of the petitioners' predecessor in title was affected by the decree, which sought to establish an easement over land of an owner who was not a party to the suit and who had no notice of it. We are of opinion that the petitioners may question in this proceeding the effect of that decree in so far as it concerns them. The respondent contends that the doctrine of "stare decisis" should be invoked. The master, in the equity suit, was careful to point out in his report that he made no finding as to the ownership of land to the east and south of lot B for the reason that neither party offered any evidence upon the point. Nevertheless, the judge proceeded to adjudicate the rights of the record owner of that land. It is only necessary to refer to the manifest injustice that would result in attempting to say that the rights of such an owner were concluded by the decree that was entered.

The respondent contends that the effect of the decree on his petition to register title to lot B, whereby he was to have all the land south of his land as far as the town line remain open, was to establish that all of the land directly south of lot B, and also that south of the prolongation of his southerly line, was to be kept open, so that, by the terms of the decree, his easement was established over all of the land of the petitioners south of that line. This contention cannot be sustained. The effect and operation of the earlier decree are to be determined with reference to the facts found and the issues intended to be decided in that case. *Attorney General* v. *New York, New Haven & Hartford Railroad*, 201 Mass. 370, 372. *Yankee Network, Inc.* v. *Gibbs*, 295 Mass. 56, 61. The extent of the respondent's easement over a portion of what is now

the petitioners' land was in issue, and it was decided that all of the land south of the present respondent's land was to be kept open in common. It is apparent that this finding was based upon the construction of the deed of 1894 to Taylor, under whom the respondent claims, and the language of this deed was to be construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed. *Allen* v. *Wood*, 256 Mass. 343, 349. There was evidence before the court in the earlier petition for registration that the forces of nature had brought about accretions to the east and south of the land, title to which it was sought to register. But the judge found that the then petitioner's land ran to stakes on the east, leaving the title to the beach at the east and at the south in others. There is no room for an inference that by the decision in that case it was intended to declare that the respondent had any easement or rights in any land, apart from lot B, except that directly south of that lot. The evident purpose of the Land Court act is to provide a method of making titles to land certain and indefeasible. *McMullen* v. *Porch*, 286 Mass. 383, 388. It is not to be assumed that if the judge had intended to declare that the then petitioner had an easement in any land except that south of his lot, "as far as the town line," he would have failed to define the easement on the east to the Atlantic Ocean as well. The cases of *Cronin* v. *Richardson*, 8 Allen, 423, and *Leach* v. *Hastings*, 147 Mass. 515, upon which the respondent relies, are distinguishable.

If the respondent had had an easement over land to the east that would take him to the sea, it is assumed that it would extend to any accretions of the servient estate. *Phillips* v. *Rhodes*, 7 Met. 322, 325. But whether we take the findings in the earlier petition for registration or those in the case at bar, it follows that the respondent had no easement over land to the east. He assumes and contends that the southerly bound of his land ran to the "Beach," and that this carried his title to high water mark. See *Castor* v. *Smith*, 211 Mass. 473. The language of the deed, however,

describing the southerly bound of lot B, is that it runs easterly to "Humarock Beach so-called to a cedar stake," thence northerly to another cedar stake. Whether the beach or the stakes were the controlling monuments was a question for the judge to determine. See *Allen* v. *Wood,* 256 Mass. 343, 349; *Foster* v. *Lee,* 271 Mass. 200, 203.

If, despite what has been said, it is to be assumed that the decree in the earlier petition for registration is open to any doubt as to the meaning of the word "south" as therein contained, this doubt is dispelled by the finding in the case at bar that the respondent has no easement over the locus "to the east of the east line of said lot B. and such line extended south in the same direction to the . . . [town] line." The decision rests upon "all the evidence." The evidence is not before us. The findings of fact upon this record are final (G. L. [Ter. Ed.] c. 185, § 15), and we find nothing in the specific facts found that, as matter of law, is inconsistent with the general conclusions. See *Sutcliffe* v. *Burns,* 294 Mass. 126, 131–132; *Horowitz* v. *Peoples Savings Bank,* 307 Mass. 222, 224, and cases cited. We are of opinion that there is no error of law apparent on the face of the record. See G. L. (Ter. Ed.) c. 185, § 15; *Burke* v. *Commonwealth,* 283 Mass. 63, 67.

*Decision affirmed.*